# MURALO COMPANY *v.* NATIONAL LEAD COMPANY.

---

TRADEMARKS.

In view of the different nature of the goods to which the marks are applied, it is error for the Commissioner of Patents to refuse to register as a trademark, as applied to kalsomine, the picture of a Dutchman, because of the registered trademark of another party, as applied to white lead, consisting of a dutch boy. (Distinguishing *Phœnix Paint & Varnish Co.* v. *John T. Lewis & Bros. Co.* 32 App. D. C. 285.)

No. 691 Patent Appeals. Submitted January 13, 1911. Decided March, 6, 1911.

HEARING on an appeal from a decision of the Commissioner of Patents sustaining an opposition to the registration of a trademark.          *Reversed.*

The facts are stated in the opinion.

*Mr. Lloyd B. Wight* and *Mr. Archibald Cox* for the appellant.

*Messrs. Britton & Gray, Messrs. Browne & Phelps,* and *Mr. Francis M. Phelps* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The Muralo Company applied for registration of a trademark as applied to kalsomine, consisting of a full length picture of a Dutchman carrying a pail in his left hand, a brush beneath his left arm, and smoking a long, hanging, stem pipe, the bowl of which was held in his right hand. This was opposed by the National Lead Company, which had a registered trademark for white lead consisting of a Dutch boy sitting upon a ledge of some kind and carrying a pail upon his arm, with his uplifted right hand holding a brush in the attitude of painting. The record does not contain the latter picture, but it was exhibited on the argument of the case.

The Examiner of Interferences was of the opinion that, considering the different natures of the goods to which the respective marks were applied, as well as the differences in the pictures on the packages, no confusion in trade would result from the use of the applicant's mark. As the result of this opinion, he dismissed the opposition. On appeal to the Commissioner that decision was reversed. The Muralo Company appeals from his decision.

The Dutch boy mark was first adopted by the National Lead Company, and was used on packages of its preparation of white lead. According to the Commissioner, whose statement has

not been questioned on that point, white lead is produced by chemical action on lead, forming a white lead acetate, which is ground and mixed with oil and put on the market in pails. "For use as a paint or wall covering the white lead is mixed with oil, turpentine, and a drier, the proportions being varied to suit the conditions under which the work is done." The kalsomine of the Muralo Company is a preparation of whiting and glue finely ground, and is placed on the market in the form of a powder, contained in paper cartons. When used for a wall covering it is mixed with hot or cold water.

In our view of the case, it is unnecessary to determine whether the figure of the Dutchman so nearly resembles that of the Dutch boy as to be calculated to deceive or mislead purchasers, when applied to articles of a similar character. In our opinion the manufactures of the respective parties are substantially different. The Commissioner says: "While it is true that one is an oil paint of a permanent character, and the other a water paint, which can be easily washed off, it is clear from the testimony that one may be substituted for the other in the painting of walls, and that the use of kalsomine would entail considerably less expense than the use of paint for the same wall surfaces. When applied to walls it would probably be impossible for a layman to distinguish the one from the other, and the testimony shows that even experts are required to make a careful examination before they can distinguish the one from the other."

This statement that white lead is an oil paint is inconsistent with the preceding one, which shows that it is merely one of the principal ingredients of oil paint. Before being applied to walls as a paint, it must be thoroughly mixed with other necessary ingredients. Kalsomine on the other hand is an entirely different preparation that is mixed with water for use.

The question of confusion in trade between sales of white lead and kalsomine cannot arise out of the difficulty in telling whether a given wall has been painted with oil paint comprising white lead, or with kalsomine dissolved in water. The real

question is whether the use of the figure of a Dutch boy on one package and that of a Dutchman on the other is calculated to mislead an ordinary person seeking to buy white lead, into buying a package of kalsomine. Bearing in mind the essential differences between the two articles, we think it impossible that such should be the case. The purchaser has some definite use in view, and must know whether he wants white lead to compound into paint, or for other purposes, or whether he wants kalsomine. He does not call for the Dutch boy or the Dutchman package, but may probably call for the Dutch boy brand of white lead, or the Dutchman brand of kalsomine. He may even call for the Dutch white lead or Dutch kalsomine, but he knows whether he wants white lead or kalsomine, and, unless mentally defective, an unprincipled salesman could not induce him to take one for the other.

The fact that one intending to use oil paint for interior walls calls for white lead, but may be induced to use kalsomine instead upon the representation that it is cheaper and when put on the wall cannot be distinguished from oil paint by anyone but an expert, does not make a case of confusion in trade.

The cases cited in support of the decision hold that the goods or articles of manufacture need not be identical, but that it is sufficient if there be a sameness in their general and essential characteristics. *Phoenix Paint & Varnish Co.* v. *John T. Lewis & Bros. Co.* 32 App. D. C. 285, on which the Commissioner relies, involved the use of the same trademark upon packages of mixed paints by one party, and upon packages of paste paint by the other. Both were sold as paint, and one calling for paint of the brand might readily be misled or deceived. The many cases cited on the brief of the appellee are analogous, and there is no occasion to review them.

Our conclusion is that the Commissioner erred in sustaining the opposition; and his decision will therefore be reversed. It is so ordered, and that the clerk certify this decision to the Commissioner of Patents.                    *Reversed.*