## RADIO CORPORATION OF AMERICA v. RAYON CORPORATION OF AMERICA.

Patent Appeal No. 4783.

Court of Customs and Patent Appeals.
Dec. 16, 1943.

Harry G. Grover, James G. Norton, and Abraham S. Greenberg, all of New York City, for appellant.

Herbert J. Jacobi, of New York City, for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in a trade-mark opposition proceeding wherein the Commissioner of Patents held that appellant's notice of opposition should be dismissed and that appellee is entitled to the registration of the mark applied for by it. The Examiner of Trade-Mark Interferences had held that the notice of opposition should be sustained, and his decision was reversed by the commissioner.

On June 14, 1938, appellee made application under the Trade-Mark Act of February 20, 1905, for the registration of the mark "R.C.A Fabric" for knotted rapon materials. The word "Fabric" was disclaimed apart from the mark shown in the drawing.

On September 15, 1938, appellant filed its notice of opposition to said application, alleging that the letters "RCA" are an abbreviation of appellant's corporate name, and that such abbreviation had been used by appellant since 1936 to designate its corporate name; that it had been so extensively used by appellant that it has become a matter of common knowledge over all parts of the United States and in foreign countries that the letters "RCA" indicate appellant; and that the mark of appellee is an appropriation of appellant's name by the appellee, prohibited by section 5 of the

Trade-Mark Act of February 20, 1905, 15 U.S.C.A. § 85.

Appellant further alleged that the RCA Manufacturing Company, National Broadcasting Company, RCA Communications, Inc., Radio-marine Corporation of America, and RCA Institutes, Inc., are wholly-owned subsidiary corporations of appellant; that the RCA Manufacturing Company is engaged in the manufacture and sale of a wide variety of products relating to radio communication, talking picture equipment, radio tubes and sets, phonographs, records, and many other electrical goods; and that the other above-named subsidiary corporations are engaged in various lines of radio communication, including the training of personnel therefor.

As a separate ground of opposition appellant further alleged that appellee's mark is the salient and dominating part of the corporate name of its subsidiary RCA Manufacturing Company, and that the use by appellee of its mark is calculated to deceive or confuse the public and thereby injure the reputation and good will of said subsidiary.

Appellant further alleged that the public seeing its well-known abbreviated name on appellee's goods will believe that the goods originated with appellant or are sponsored by it, to the damage of its reputation.

Appellant took testimony and stipulated testimony was introduced by appellee. In said stipulated testimony we find the following: "That the letters 'R. C. A.' constituting applicant's mark herein were, for brevity, adopted and taken from the first letters of each of the dominant words of the applicant's corporate title, 'Rayon Corporation of America,' and that at the date of adoption of said letters applicant knew of Radio Corporation of America and its use of the letters 'RCA'."

The Examiner of Interferences, in his decision, found that in the early part of appellant's career, which began in 1918, it adopted the notation "RCA" as an abbreviated name for its organization, and that its advertising in which the abbreviation "RCA" was featured was national in scope, and cost in excess of an average of two and one-half million dollars per year during the period 1929 to 1939.

The Examiner of Interferences in his decision further stated:

"The evidence submitted is deemed to establish that as a result of opposer's wide-spread activities the notation 'RCA' at and since the time of applicant's adoption thereof has for many years been well known as a name for the opposer company, and that when used alone the notation 'RCA' is generally recognized as designating the opposer and is quite sufficient to identify the latter. The testimony to that effect is amply substantiated by news, trade and magazine articles appearing in numerous national magazines, newspapers and other publications since as early as 1922, of which Exhibits 31, 32, 33, 36, 37, and 47 to 68 are illustrative. In these articles the opposer company more often than not is referred to merely by this abbreviation of its corporate title.

"Under these circumstances the examiner is persuaded that the notation 'RCA' has become so identified with the opposer company that its use as a part of the mark 'R. C. A. Fabric' sought to be registered would lead many purchasers to assume that the opposer has sponsored the production and sale of applicant's goods."

With respect to appellant's subsidiary corporations, the Examiner of Interferences stated:

"In connection with applicant's argument to the effect that the use of 'RCA' as a name has not been exclusive with the opposer because of its presence in the names of three of its before mentioned subsidiaries, the record is deemed to show that at and since the organization of these subsidiaries this notation without more has signified the opposer company alone. That is to say, the word 'Manufacturing', for example, is believed to be an essential feature of the name of RCA Manufacturing Company, and like corresponding portions of the names of the other of such subsidiaries, must be used in combination with 'RCA' in order to distinguish this company from others including the parent organization.

"Moreover, it appears that the relationship between opposer and each of its subsidiaries has been substantially that of principal and agent, the products and services of these subsidiary companies being advertised and sold under the sponsorship of opposer, as indicated, for instance, by the multiple page advertisements in Life Magazine (Exhibits 14a, b and c). In such case, use by the agent of a symbol in connection with the business of its principal would inure to the benefit of the latter and therefore could not well detract

from an otherwise valid claim of the principal to the right to the exclusive use thereof."

The commissioner, in his decision reversing the decision of the examiner, held that the appropriation by appellee of appellant's corporate name is only partial, and hence not absolutely prohibited by the name clause of section 5 of said Trade-Mark Act. He further held that because of the difference between the goods to which appellee applied its mark and the goods with which appellant is concerned, the public would not be likely to associate appellee's goods with those of appellant. He, therefore, held that appellant's opposition should be dismissed.

It is our opinion that the testimony abundantly establishes that the combination of the letters "RCA" is generally understood by the public as meaning "Radio Corporation of America." Therefore, while only an abbreviation of appellant's name is used, that abbreviation has become generally understood by the public to mean merely the name of appellant.

With respect to the use of abbreviations and nicknames to indicate a corporate name, we quote from Nims on Unfair Competition and Trade-Marks, Third Edition, p. 246, as follows: "Corporate names or parts of these names when used to designate goods or business houses, or as trade 'nicknames,' are trade names pure and simple, in most instances, and can be protected as such. The commercial nickname, or abbreviated name, is often more valuable, far better known, and more carefully guarded from use by rivals than the formal or full name from which it is taken. Hence it is that unfair competition applies to nicknames of corporations. 'U. M. C.' for Union Metallic Cartridge Co.; 'Winchester', for Winchester Repeating Arms Co.; 'Equitable,' for Equitable Life Assurance Society; 'C. B. & Q.,' for Chicago, Burlington & Quincy; 'B. & A.,' for Boston & Albany, are instances of such nicknames. One hears or sees the full corporate name used seldom in comparison to the number of times the nickname is used."

The above quotation was quoted with approval in the case of Great Atlantic & Pacific Tea Company v. A. & P. Radio Stores, Inc., D.C., 20 F.Supp. 703.

Many other abbreviations can be mentioned which indicate to the public merely the name of a particular corporation or association.

Among such are: Y. M. C. A., Young Men's Christian Association; F. B. I., Federal Bureau of Investigation; A. F. L., American Federation of Labor; B. & O., Baltimore and Ohio Railroad Company.

Because of appellant's extensive advertising and deliberate adoption by it in such advertising of the letters "RCA" to indicate its corporate name, all of which appears in the record before us, it is fair to assume that the public associates the letters "RCA" with the Radio Corporation of America, as readily as it does the abbreviations above referred to as indicating the full names of the respective organizations.

The commissioner, in arriving at his decision holding that appellee's appropriation of appellant's corporate name was only partial, relied upon and quoted from the case of American Steel Foundries v. Robertson et al., 269 U.S. 372, 46 S.Ct. 160, 162, 70 L.Ed. 317, hereinafter termed the Simplex case, as follows: " * * * where less than the whole name has been appropriated, the right of registration will turn upon whether it appears that such partial appropriation is of such character and extent that, under the facts of the particular case it is calculated to deceive or confuse the public to the injury of the corporation to which the name belongs."

We do not find it necessary to decide the question of whether the letters "RCA" should, under the circumstances, be regarded as merely appellant's corporate name. Concededly appellee has appropriated as a trade-mark the letters "RCA" which are the first letters of Radio, Corporation, and America, respectively, so there is at least a partial appropriation of appellant's corporate name, and said letters are, as hereinbefore stated, generally regarded by the public as indicating the appellant.

With respect to the partial appropriation of a corporate name, in the Simplex case the court said:

"Where the appropriation of the corporate name is complete, the rule of the statute, by its own terms, is absolute, and the proposed mark must be denied registration, without more; but, where less than the whole name has been appropriated, the right of registration will turn upon whether it appears that such partial appropriation is of such character and extent that, under the facts of the particular

case, it is calculated to deceive or confuse the public to the injury of the corporation to which the name belongs.

"The fact, for example, that the articles upon which the mark is used are not of the same description as those put out by the corporation, is entitled to weight, since the probability of such confusion and injury in that situation obviously is more remote than where the articles are of like kind. The cases, naturally, present varying degrees of difficulty for the application of the rule. Primarily the power and the duty rests with the Commissioner of Patents to determine the question in each case, in the exercise of an instructed judgment upon a consideration of all the pertinent facts."

Appellee strongly relies upon the statement above quoted that where there is a partial appropriation, the fact that the articles upon which the mark is used are not of the same descriptive properties as those put out by the corporation a part of whose name has been appropriated must be given weight.

While the court, in the Simplex case, pointed out that, in cases involving a partial appropriation, the question of descriptive properties of the goods must be given weight, it is clear from that decision that the court did not mean that such fact is controlling, and that in all cases where the goods of the parties are of different descriptive properties, the partial appropriation of a corporate name as a trade-mark is permissible. In that case the court said: "In the present case, these facts are: The word 'Simplex' is only a portion of the corporate name; its use by plaintiff is upon articles the like of which has never been manufactured or sold by the defendant corporation; it comprises the whole or a part of about 60 registrations by nearly as many different parties upon many kinds of merchandise; and it forms part of the names of other corporations in the country."

The court made no further reference to the matter of descriptive properties of the goods and apparently did not base its decision upon the fact that the goods of the parties were not of the same description.

If that feature had been controlling of its decision, there would have been no occasion for its discussion of other features of the case. In fact, no stress seems to have been laid by the court upon the feature of the descriptive properties of the goods, but the decision appears to rest upon the fact, as found by it, that the word "Sim-plex" alone did not identify to the mind of the public the appellee corporation, "Simplex Electric Heating Company." Upon this point we quote further from its decision. "It is argued that the word in question is the salient feature in the name of the defendant corporation; but that, if conceded, does not settle the question. *There may be, of course, instances where a single word in the corporate name has become so identified with the particular corporation that, whenever used, it designates to the mind of the public that particular corporation.* But here it is not shown that, standing alone, the word 'Simplex' has that effect; that it is any more calculated to denote to the public the defendant corporation than any of the other corporations in the names of which it is likewise embodied; or, indeed, that it signifies the appropriation of some corporate name though incapable of exact identification." (Italics supplied.)

The case at bar clearly differs from the Simplex case in that the notation "RCA" has become so identified with appellant that wherever used it designates to the mind of the public appellant Radio Corporation of America.

We, therefore, hold that the mere fact that the goods in which appellant is concerned and the goods to which appellee applies the mark "R.C.A" may be of different descriptive properties is not decisive of the question before us. The views last above expressed are substantially those expressed by the Court of Appeals of the District of Columbia (now the United States Court of Appeals for the District of Columbia), in the case of Duro Pump & Mfg. Co. v. California Cedar Products Co., 56 App.D.C. 156, 11 F.2d 205, 206. In that case the appellee applied for the registration of the mark "Duro" applied to wall board. The business of appellant was the manufacture and sale of pumps, etc.

After quoting at length from the decision in the Simplex case, the court said:

"It is apparent, from the language already quoted, that the Supreme Court did not intend to rule that identity of the descriptive properties of the goods of two parties was controlling, where one had taken for its mark the distinguishing part of the corporate name of the other. This is made even plainer in subsequent language of the court, as follows: 'There may be, of course, instances where a single word in the corporate name has become so identified with the particular corporation that, when-

ever used, it designates to the mind of the public that particular corporation. But here it is not shown that, standing alone, the word "Simplex" has that effect; that it is any more calculated to denote to the public the defendant corporation than any of the other corporations in the names of which it is likewise embodied; or, indeed, that it signifies the appropriation of some corporate name, though incapable of exact identification.' * * *

"In the present case, when the California Cedar Products Company adopted the word 'Duro' as its trade-mark, that word had 'become so identified with the particular corporation' (the Duro Company) that, whenever used, it designated to the mind 'that particular corporation.' While the descriptive properties of the products of the two companies are technically different, both are used in residences, and under the evidence, we are constrained to the view that their concurrent use would tend to confusion of the identity of the Duro Company. If the California Cedar Products Company were permitted to use this mark, which has come to represent the Duro Company and its product to the public, other companies likewise might use it, with resultant loss of identity of the Duro Company."

So in the case at bar if appellee were permitted to use and register the notation "RCA" which has come to represent to the public the appellant Radio Corporation of America, other companies likewise might use it upon different products with resultant loss of identity of the Radio Corporation of America.

■ Appellant is concerned with radios and other radio electrical apparatus. Appellee applies its mark to knitted rayon materials. Both radios and knitted rayon materials are used in homes, and are often bought by the same class of people. Considering the fact that the notation "RCA" has come to be known by the American public as meaning "Radio Corporation of America," it would be very reasonable for purchasers, upon seeing the "R.C.A" mark upon knitted rayon materials, to conclude that appellant was engaged in, or was sponsoring, the manufacture of such goods.

■ Another question is whether the fact that appellant owns several subsidiary corporations using as a part of their corporate names the letters "RCA," brings this case within the ruling of the Simplex case that where a common word in a corporate name has been used by many cor-

porations as parts of their names, no one corporation may properly claim the exclusive use of such word in its corporate name. In the Simplex case it was shown that the word "Simplex" did not identify any corporation in particular, because it was equally the name of many corporations, also that there had been registered approximately sixty trade-marks consisting, in whole or in part, of the word "Simplex."

In the case at bar, wherever the letters "RCA" are used as a part of the name of appellant's subsidiary, they indicate to the public the name of appellant as endorsing or sponsoring the goods of its subsidiary corporations.

The distinction between the case at bar and the Simplex case in this regard is so apparent that it requires no further discussion.

■ One other contention of appellee requires brief mention. It placed in the record various registrations in which in some form or other the letters "RCA" appeared. In only one of them did the unitary notation "RCA" appear, and it appears that such registration has been cancelled.

Upon this point the Examiner of Interferences, in his decision, stated: "The record fails to show, disregarding the unauthorized use of 'RCA' as evidenced by cancelled Registration No. 270,174, that the unitary notation 'RCA' prior to applicant's use thereof has been in use by any person other than the opposer and its subsidiaries, either as a name or trade mark or as a separable feature thereof."

The record supports this statement of the Examiner of Interferences.

■ Appellant has moved to strike from appellee's brief the following statement: "This is denied. This was the act of Opposer's own reporter who saw fit, for one reason or another, to abbreviate for the benefit of this record, the name of the Opposer company. Applicant's counsel is not responsible for the typing of the records erroneously."

Manifestly appellee may not challenge the correctness of the record by a statement in his brief and the motion is granted.

For the reasons herein stated we are of the opinion that the decision of the Examiner of Interferences sustaining appellant's notice of opposition was right, and the decision of the Commissioner of Patents appealed from is reversed.

Reversed.