38 C.C.P.A.(Patents)

## TIDY–HOUSE PAPER PRODUCTS, Inc. v. TIDY HOUSE PRODUCTS CO. (IOWA).

## TIDY HOUSE PRODUCTS CO. (IOWA) v. TIDY–HOUSE PAPER PRODUCTS, Inc.

**Patent Appeal Nos. 5765, 5768.**

United States Court of Customs and Patent Appeals.

May 8, 1951.

Emanuel R. Posnack, New York City (Abraham J. Nydick, New York City, and Almon S. Nelson, Washington, D. C., of counsel), for Tidy-House Paper Products, Inc.

Bair, Freeman & Molinare, Chicago, Ill. (Rogers & Woodson, Chicago, Ill., Smith, Michael & Gardiner, Washington, D. C., W. M. Van Sciver, W. T. Woodson, Chicago, Ill., and Spencer B. Michael, Washington, D. C., of counsel), for Tidy House Products Co. [Iowa], (Tidy House Products Co., Nebraska, Substituted.)

Before GARRETT, C. J., and JACKSON, O'CONNELL, JOHNSON, and WORLEY, JJ.

WORLEY, Judge.

These are two appeals from the decisions of the Commissioner of Patents in trademark opposition proceedings, 80 U.S.P.Q. 526 and 80 U.S.P.Q. 527, respectively. Both proceedings were based upon the same record and exhibits and while two decisions were given and separate briefs have been filed here, we will dispose of the appeals in a single opinion.

### Appeal No. 5765.

In this case, appellant-applicant, Tidy-House Paper Products, Incorporated, of Brooklyn, New York, hereinafter referred to as the New York Corporation, appeals from the decision of the Commissioner of Patents sustaining the opposition of Tidy House Products Company, originally of Des Moines, Iowa, (Tidy House Products Company, Nebraska, substituted), hereinafter referred to as the Nebraska Corporation.

It appears that the opposition arose when the New York Corporation made application for registration of the phrase "Tidy House," under the Trade-Mark Act of 1905, now 15 U.S.C.A. § 1051 et seq., as applied to "Paper Place Mats, Bowl Covers, Waxpaper, Paper Napkins, Paper Towels, and Paper Toilet Tissue."

In its notice of opposition, the Nebraska Corporation alleged ownership and prior use of the trade-mark "Tidy House" for a number of household items which included liquid silver polish, window cleaner, rug and upholstery shampoo, laundry soap, wall paper cleaner, sanitary bowl-flush, scouring powder, painted surface cleaner, toilet soap, dry cleaning fluid of solvent type, polishing cloths, self-polishing wax for painted or varnished surfaces, furniture polish emulsion, and paste wax for varnished or painted surfaces.

The grounds of opposition raised by opposer, Nebraska Corporation, include the confusion in trade clause and the name clause of Section 5 of the Act, the pertinent portions of which read as follows: Sec. 5. "That no mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trade mark on account of the nature of such mark unless such mark—* * * so nearly resemble[s] a registered or known trade mark owned and in use by another, and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers * * no mark which consists merely in the name of an individual, firm, corporation, or association not written, printed, impressed, or woven in some particular or distinctive manner * * * shall be registered under the terms of this Act * * *."

The Examiner of Interferences summarized the facts of record as follows:

" * * * the business conducted by the opposer's corporation in connection with the mark on which it relies is a continuation of a like enterprise of a partnership having a similar name which it succeeded in September 1941. This partnership was formed in the fall of 1939, largely through the efforts of the opposer's witness Hunt, who earlier the same year had filed an application in his own name for registration of the mark "tidy house" as applied to various cleaning and detergent preparations in Class 4 of the official classification of merchandise, and in January 1940, subsequent to the formation of the partnership, filed a second application in his individual name for registration of this mark for polishing wax and related goods in Class 16. These applications later matured into Registrations Nos. 374,706 and 382,209, respectively, which in December 1941 were assigned by Hunt to the opposer's corporation by a recorded instrument of assignment, opposer's Exhibit 10.

"While the opposer's testimony is not altogether clear upon the point, it seems doubtful that the opposer's assignor Hunt, as an individual, made use in trade of the mark "tidy house" as early as June 1939 when the first of said applications for registration was filed. And as to the second thereof, the record affirmatively shows that when this application was filed the mark was being used by the partnership rather than by Hunt. Regardless of whether or not either registration properly issued to Hunt, however, the partnership succeeded to whatever rights he may have owned in the mark when it commenced business in the fall of 1939. Hence the opposer's assignor Hunt possessed no proprietary interest in the mark in December, 1941 at the time the assignment of Exhibit 10 was executed, and such an assignment, in the absence of an intervening assignment to the partnership, therefore was without legal force as a transfer of title to the registered mark concerned.

"For the reasons indicated the opposer is deemed not to be entitled to rely upon the registrations referred to as evidence of use of its mark upon the goods therein recited; and the testimony in fact reveals that a number of the products specified in such registrations have never been marketed by the opposer or any predecessor thereof. On the other hand, it is amply established by the evidence offered in its behalf that the opposer has had use in its own right of "tidy house" for certain of the products pleaded in the notice of opposition since prior to the earliest date of use claimed by the applicant, and as regards such products it becomes immaterial in this proceeding whether or not the opposer may own a registration for its mark." Primrose House Inc. v. The Randolph Drug Co., 72 U.S.P.Q. 173.

Testimony of opposer's witnesses disclosed that the predecessor of the Nebraska Corporation, as early as 1939, had registered the mark "Tidy House" in thirteen states; that it had bought radio and magazine advertising which had both local and national coverage; that the goods of opposer were sold in grocery, hardware, and department stores, and that the goods of opposer and those of applicant were often sold in the same section of such stores and often from the same shelves in the same departments; and that as a result of similar merchandising methods and of the concurrent use of the same marks, several instances of actual confusion as to the origin of the involved products have occurred.

It is not disputed that the mark sought to be registered by the New York Corporation is almost identical with that of the Nebraska Corporation.

As stated above, the Nebraska Corporation predicated its opposition to the application for registration by the New York Corporation on the grounds that "Tidy House" is a distinguishing feature of its corporate name, and that the articles of the parties possess the same descriptive properties.

The examiner held, and we think properly, that the involved goods do not possess similar descriptive properties to such a degree as to create the likelihood of confusion contemplated by the statute.

The examiner did find, however, that " * * * the opposer's corporate name, Tidy House Products Company, which had been in use as such since considerably prior to the filing of the application here involved, is a bar to the registration applied for.

"It appears from the evidence filed on behalf of the opposer that there have been a number of instances of actual confusion of identities of the parties as a result of use of "Tidy House" as the distinguishing feature of the opposer's name and the concurrent use of this same notation by the applicant. Even without this evidence, however, it seems clear to the examiner that such confusion would be likely to occur. The expression 'Tidy House' is a unique and highly distinctive one, which so far as appears herein has never been used in trade for any purpose by other than the parties or persons in privity therewith. Under such circumstances it is believed that the use of 'Tidy House' in the respective name and mark is calculated to cause confusion of the parties, even though

they are engaged in different lines of trade." American Steel Foundries v. Robertson, 269 U.S. 372 [46 S.Ct. 160, 70 L.Ed. 317], 1926 C.D. 289.

Upon appeal by the New York Corporation, the commissioner sustained the examiner in the following language: "The fact that the goods do not possess the same descriptive properties is not, however, controlling with respect to the claim based upon the name clause. 'Tidy House' is clearly the salient and distinguishing feature of opposer's corporate name under the principle set out in American Steel Foundries v. Robertson, 269 U.S. 372 [46 S.Ct. 160, 70 L.Ed. 317], 1926 C.D. 289, and Duro Pump & Manufacturing Co. v. California Cedar Products Co., 56 App.D.C. 156, 11 F.2d 205. There is some evidence of confusion of identity of record between the two corporations but, as found by the examiner of interferences, it seems clear that there is likelihood of confusion irrespective of such evidence. Considering the matter in accordance with the name clause of the Trade-Mark Act of 1905, the decision of the examiner of interferences must be considered well founded." American Steel Foundries v. Robertson, supra; Duro Pump & Manufacturing Co. v. California Cedar Products Co., supra; Radio Corporation of America v. Rayon Corporation of America, 139 F.2d 833, 31 C.C.P.A. [Patents,] 808; Air King Products Company, Inc. v. Bernstein, 590 O.G. 536, 70 U.S.P.Q. 504; Safeway Stores Incorporated v. Safeway Opticians, Inc., 584 O.G 498, 68 U.S.P.Q. 333.

■ With these views we are in thorough accord and hereby affirm the action of the commissioner in appeal No. 5765.

Affirmed.

### Appeal No. 5768.

The facts in this appeal appear to be substantially the same as those in the companion appeal except that here the New York Corporation made application to register the "Tidy House" mark for use on "Household Bags, Sandwich Bags, Place Mats, Refrigeration Bags, Garbage Bags, Bowl Covers, Waxpaper, Paper Napkins, Packing and Shipping Bags, Food Bags, Paper Towels, Coasters, Paper Toliet Tissue, Cups and Plates."

In its notice of opposition, the Nebraska Corporation relied on several grounds therefor, which included the confusion in trade clause but did not include the name clause which was pleaded in the companion case.

■ In this appeal, as in the companion case, the examiner held that the goods of the parties were not sufficiently similar as to be likely to result in confusion in trade. The commissioner sustained that holding. We are in complete agreement with such action.

■ However, we disagree with the conclusion of both the examiner and commissioner that the failure of the Nebraska Corporation to plead the name clause within the thirty-day statutory period, of itself, justifies or warrants the appropriation by the New York Corporation of the "Tidy House" mark owned by the Nebraska Corporation, because it was the duty of the Patent Office to consider the corporate name clause *ex parte*.

■ In the case of Burmel Handkerchief Corp. v. Cluett, Peabody & Co., Inc., 127 F.2d 318, 321, 29 C.C.P.A., Patents, 1024, this court said: "The contention of appellant that the tribunals of the Patent Office erred in deciding the *ex parte* case before deciding the *inter partes* case is without merit. * * * 'It was not only the right but the duty of the tribunals of the Patent Office to determine, *ex parte*, and without reference to issues raised by the notice of opposition, whether the mark was entitled to registration'."

And in the later case of McKesson & Robbins, Inc. v. Isenberg, 167 F.2d 510, 512, 35 C.C.P.A., Patents, 1095, this court again said: "We have held many times that it is not only the right but the duty of the tribunals of the Patent Office to determine *ex parte* and without reference to the issues raised by the notice of opposition, whether a mark is entitled to registration. * * *"

Clearly the Patent Office followed the law applicable to *inter partes* proceedings

in holding that, as between the two contestants, the failure of opposer to plead the name clause within the statutory period was a bar to it in such *inter partes* proceedings. However, as has been stated, we feel that it was incumbent upon the tribunals of the Patent Office, as guardian of the public interest, to consider *ex parte* the application for registration in the light of the corporate name clause.

The decisions of both the examiner and the commissioner create doubt in our minds as to the extent of *ex parte* consideration given the mark sought to be registered. We quote from the decision of the examiner as follows:

"There remains to consider, ex parte, the question of applicant's right to registration.

"Testimony for the applicant establishes that of the various items enumerated in its application, the mark sought to be registered has been used only upon household, food, and garbage bags. Appropriate amendment of the application therefore will be required in the event the applicant finally prevails in this proceeding.

"For the reasons set forth above, the notice of opposition is dismissed; and subject to the filing of the suggested amendment to the description of the applicant's goods, it is further adjudged that the applicant is entitled to the registration for which it has made application."

There is nothing in the decision of the examiner to indicate that the registrability of applicant's mark was considered *ex parte* under the name clause of the statute. Furthermore, there is nothing in the record to apprise us as to the reason, if any there was, such consideration was not given by the examiner.

We find in the decision of the commissioner the following: "Opposer further contends that the examiner of interferences should have taken ex parte action to refuse registration in view of opposer's corporate name. While opposer may suggest ex parte action, it is not entitled to question the decision of the examiner of interferences upon such matters. McKesson & Robbins, Incorporated v. Isenberg, 167 F.2d 510, 35 C.C.P.A. [Patents,] 1095; Island Road Bottling Company v. Drink-Mor Beverage Company, 140 F.2d 331, 31 C.C.P.A. [Patents,] 816. In view of the fact that opposer has waived its right to rely upon this ground of opposition and that the basis of such suggested ex parte action appears only in the record of this case and not from matters otherwise of record in the Patent Office, it does not appear appropriate that ex parte action be taken at this time, nor is the suggestion that this be taken affected by anything contained in the Trade-Mark Act of 1946 to which both parties refer, although conceding that this case must be considered under the provisions of the Trade-Mark Act of 1905."

We are entirely at a loss to understand what is meant by the holding of the commissioner with respect to the taking of *ex parte* action. This language might be construed to mean that *ex parte* action would be taken at a subsequent time after the Patent Office has had jurisdiction of the case returned to it. On the other hand, it may be that the commissioner intended to affirm the holding by the examiner that the applicant is entitled to register its mark. If the latter construction is to be placed on the quoted portions of the decisions, it is clear that a most unusual and inconsistent situation results. In Appeal No. 5765, the tribunals of the Patent Office properly held that applicant could not register its mark because it had appropriated the corporate name of the opposer, while in the instant case, if the holdings of the Patent Office should be upheld, applicant is free to do the very thing which it was not allowed to do in the companion case.

For the reasons stated, we hereby reverse the decision of the commissioner and remand this case for further proceedings to consider *ex parte* the applicability of the corporate name clause of the 1905 Act to the application here involved.

Reversed and remanded.