39 C.C.P.A.(Patents)
## ALLIGATOR CO. v. LARUS & BROTHER CO. Inc.

### No. 5837.

United States Court of Customs
and Patent Appeals.

March 31, 1952.

Rehearing Denied May 23, 1952.

O'Connell, J., dissented.

Zabel & Gritzbaugh, Chicago, Ill. (Thomas L. Mead, Jr., Washington, D.C., Bayard Jones, and Max W. Zabel, Chicago, Ill., of counsel), for appellant.

A. Yates Dowell, Washington, D.C., for appellee.

Before GARRETT, C. J., and JACKSON, O'CONNELL, JOHNSON, and WORLEY, JJ.

GARRETT, Chief Judge.

This is an appeal from the decision of the Commissioner of Patents, speaking through Assistant Commissioner, Honorable Joe E. Daniels, 86 U.S.P.Q. 332, affirming that of the Examiner of Trade-Mark Interferences dismissing appellant's notice of opposition to the application of appellee for a trademark registration on the Principal Register under the Trade-Mark Act of July 5, 1946, commonly known as the Lanham Act, 15 U.S.C.A. § 1051 et seq.,[1] and according appellee the right to register.

The mark which appellee seeks to register consists of the word "Alligator" in capital letters enclosed within an oval-shaped ring which rests upon a base that simulates alligator leather. At the top of the ring there is a caricature of an alligator standing upright on its hind legs with curved tail, the tip of which points toward the back of the body. In the right paw there is what is assumed to be a representation of a "walking stick," or cane, and the corresponding left member holds a representation of a cigarette. In front of the head, which is placed at practically a right angle to the body, three circles are shown which represent rings such as those frequently blown by smokers, particularly by cigarette smokers.

Appellee's application is for registration of the composite mark as a trade-mark "for tobacco and tobacco products, namely smoking tobacco, chewing tobacco, cigars, cigarettes, and snuff." November 12, 1946, was alleged as the date on which it was "first used in commerce which may be lawfully regulated by Congress." This is a date long subsequent to the time when appellant acquired ownership and registration of marks which it pleaded in its notice of opposition, as hereinafter stated.

With respect to the grounds of appellant's opposition, we quote the following statement from the decision of the Examiner of Trade-Mark Interferences:

"The opposer's right of action is predicated upon general allegations of confusion in trade and unfair competition and more specifically (1) upon allegations of prior use by opposer of the word 'Alligator' as a corporate name and trade name, as well as a trade-mark upon rainwear and sportswear, such as raincoats, topcoats and jackets and that the word 'Alligator' has become strongly associated in the public mind with opposer's business and reputation; (2) allegations of ownership by opposer of the trade-mark Registrations Nos. 75,365, 251,201, 268,072, 346,241, 346,414 and 358,254, 'which embody the word "Alligator" '; (3) allegation of prior use by opposer of pictorial representations of an alligator, in connection with advertisements of its products; (4) allegation of prior use by opposer of a distinctive commercial signature 'which appears on its advertisements and elsewhere' and which is characterized by 'the use of shaded capital letters for the word "Alligator" and by the use of script for the word describing the goods, the latter word appearing directly under the former' which commercial signature, petitioner alleges, applicant has copied; and (5) allegation of prior manufacture and sale by opposer of 'other products, such as sheets, ground blankets, curtains, awnings, tarpaulins, tobacco pouches, hospital sheeting and baggage covers.' As a statutory ground of opposition, the opposer relies upon the first clause of section 2 (d) of the Act of 1946 and upon sections 2 (a), 44 (g) and 44(h) of the same Act."

Of the various registrations pleaded by appellant the only one which shows a pictorial representation of an alligator is No. 75,365, which originally was registered

1. The Act was formulated by the Committee on Patents of the House of Representatives of which Honorable Fritz Lanham of Texas was Chairman at the time of the passage of the bill by the Seventy-Ninth Congress.

September 28, 1909, in the name of a predecessor in business of appellant. It was renewed to appellant September 28, 1949.

Much testimony was taken on behalf of both parties and many exhibits were placed in evidence. Briefs for both parties were

For the purposes of visual comparison we here reproduce prints, the first being that of appellee and the second that of appellant.

filed in the Patent Office and oral arguments presented. The decisions—both that of the examiner and that of the Assistant Com-

missioner—evidence careful study of the factual record and full consideration of the questions of law arising from the changes made in the trade-mark registration statutes.

One of the changes from the Trade-Mark Act of February 20, 1905, relates to the registration of names.

The third proviso of section 5 of that act read in part:

"* * * That no mark which consists merely in the name of * * * [a] corporation * * * shall be registered under the terms of this Act."

That provision had no relation whatsoever to the question of confusion in trade or unfair competition. Hence, applications to register merely corporate names were rejectable without any reference to the question of confusion.

Appellee here, in fact, first applied for registration under that act, but its application was summarily refused, the name of appellant being cited as a statutory bar. Appellee thereupon converted its application into one under the Lanham Act, which has no provision such as that which was present in the third provision of section 5 of the 1905 Act, a portion of which is quoted, supra.

Another vital change respecting the registration of trade-marks relates to the phrase "same descriptive properties."

Section 5 of the 1905 Act read:

"Sec. 5. That no mark by which the goods *of the owner of the mark* may be distinguished from other goods of the same class shall be refused registration as a trade-mark on account of the nature of such mark unless such mark—

* * * * * *

"* * * *Provided,* That trademarks which are identical with a registered or known trade-mark owned and in use by another and appropriated to merchandise of the *same descriptive properties,* or which so nearly resemble a registered or known trade-mark owned and in use by another and appropriated to merchandise of the *same descriptive properties* as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers

shall not be registered: * * *." (Italics supplied.)

For the foregoing the Lanham Act substitutes the following in section 2 thereof:

"No trade-mark by which the goods of the *applicant* may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

* * * * * *

"(d) Consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods *of the applicant,* to cause confusion or mistake or to deceive purchasers: * * *." (Italics supplied.)

In view of the foregoing changes, the Assistant Commissioner, in the course of his decision in the instant case, said:

"* * * It is no longer necessary to establish that the goods of the parties possess the same descriptive properties, as was previously required under Section 5 of the Trade-Mark Act of 1905, and it has been held by the Patent Office in ex parte matters that the new section provides a more flexible test which will require refusal of registrations in cases where there is likelihood of confusion, mistake or deception, even though the goods fall into different categories, while presumably permitting registration in the case of goods which fall within the same general class, but where it is apparent that confusion is unlikely. Ex parte Quaker Hair Goods Co., 627 O.G. 927, 82 U.S.P.Q. 445."

It is noted that the decision in the cited case, like that in the instant case, was rendered by Assistant Commissioner Daniels. It is our opinion that he correctly stated the legal effect of the change in statutory language.

We agree also with his further statement that "it is still necessary, however, to establish likelihood of confusion," and we anticipate that, at least for a time, difficulties probably will arise frequently over this

question in the administration of the new act.

As stated, in substance, in the decision of the Examiner of Trade-Mark Interferences quoted, supra, appellant is the owner of five registered marks which include the word "Alligator," printed with different styles of type, but which do not include a pictorial representation of an alligator, and the registrations antedate the claim by appellee for beginning use of its mark.

In addition to the registered marks pleaded in the notice of opposition, there were introduced in evidence labels showing caricatures of alligators in different distorted poses. They are not carrying canes nor smoking cigarettes, but seem to be trudging through heavy showers of rain, whereby, we assume, it is expected that they will be associated in public thought with raincoats and other waterproof garments of the kind manufactured by appellant. Some of the labels show the word "Rainwear" arranged on them. These are in different styles of type and their location on the labels varies with reference to the word "Alligator" and the distorted figure.

It is noted that the Examiner of Trade-Mark Interferences stated:

"* * * opposer's use of caricatures of an alligator in various positions in connection with some of its advertisements of its rainwear and sportswear prior to 1946 is not disputed by applicant and is deemed established by the evidence."

However, he added:

"There is no positive proof that any alligator caricature or even normal pictorial representation of an alligator *was ever actually used* by opposer as a mark on any of its goods sold in commerce." (Italics supplied.)

The use of the distorted figures by appellant seems to have been in newspaper and magazine advertisements, window displays, and the like, and not for application to the goods being so advertised.

With its original application under the 1905 Act appellee also filed specimens of its labels, one of which is contained in the record. It shows the word "Cigarettes" in script below the word "Alligator" in the oval described. The word "Cigarettes" is not shown in the drawing filed with appellee's application for registration and so actually forms no part of the application involved.

It is obvious that there is practically no resemblance in appearance between the composite *registered marks* pleaded by appellant and the composite mark which appellee seeks to register. Each contains the word "Alligator," it is true, but the style of type used in printing it in appellant's registration clearly is different from the style of that used by appellee.

If this were a case under the 1905 Act, that difference would be immaterial in view of the arbitrary prohibition of the registration of a corporate name, but the situation is quite different under the 1946 Act where the question involved is likelihood of confusion respecting origin of the merchandise.

When determining the matter of resemblance, it is elemental that composite marks must be considered as entireties.

To find the features which appellant particularly emphasizes as establishing resemblance between its marks *as used* and that of appellee as it was stated *to be used* when the latter's application was filed, resort must be had to the labels presented rather than to the drawings, or prints, of the marks themselves, and it is our very positive view that even the labels of the respective parties do not disclose any resemblance upon which a finding of likelihood of confusion properly may be predicated. Appellee's word "Cigarettes," which as hereinbefore stated is not included in the design for which registration is sought, is in script that does not simulate the style of appellant's word "Rainwear" nor other of its word notations not included in any one of its registrations. As for the respective grotesque alligator figures, they appear to us about as dissimilar as distorted figures of any animal could very well be. It is not established to our satisfaction that appellee's mark, either as it is proposed for registration or as it is shown to have been used with the word "Cigarettes" included, so resembles any one of appellant's registered marks, or any mark or trade name previously used in the United States by ap-

pellant, that it would be likely, when applied to the goods of appellee, to cause confusion or mistake or to deceive purchasers.

However, even if we be deemed mistaken as to the matter of resemblance between the marks of the respective parties, surely no confusion or deception possibly can be. likely to arise from the registration and use of appellee's mark when the character of the merchandise of the respective parties is taken into consideration as, of course, it must be.

Upon this the Examiner of Trade-Mark Interferences said:

"It is the opinion of the examiner that the respective goods of the parties are so completely different in nature, classification and use, and are sold through so widely different trade channels, that there is no likelihood of confusion, or mistake in trade or deception of purchasers by the simultaneous use of the respective marks of the parties on their respective goods."

Pursuing the same thought the Assistant Commissioner declared:

"Since the goods differ to such a substantial extent I am not convinced that even the widest recognition of opposer's mark would cause a potential customer of cigarettes to associate them with the opposer's products or suggest that they emanate from the same source even when bearing the same mark."

We are in entire harmony with those holdings.

Sufficient has been said, we think, concerning appellant's reliance upon section 2 (d) of the Lanham Act.

Appellant suggests that the registration "can" be denied under section 2(a) of the Lanham Act which, in effect, prohibits the registration upon the principal register established by the act of a mark which

"Consists of or comprises immoral, deceptive, or scandalous matter; or matter which may disparage or falsely suggest a connection with persons, living or dead, institutions, beliefs, or national symbols, or bring them into contempt, or disrepute."

The brief for appellant suggests the applicability of the phraseology "falsely suggests a connection with persons, living or dead," but it fails to point out any persons living or dead with whom there is a suggestion in the mark of any connection, and we fail to discern any applicability of the phraseology to the state of facts here existing.

With respect to sections 44(g) and 44(h), also invoked by appellant, the Commissioner said:

" * * * These deal with rights of foreign nationals and do not relate to registrations, and are not considered pertinent."

Appellant alleges that there was error in the interpretation of those portions of the sections, but fails to point out satisfactorily wherein the error lay. We do not discern their applicability here.

We commend to those interested in the interpretation of the Lanham Act a careful reading of the decisions by the tribunals of the Patent Office in the instant case.

The decision of the Commissioner is affirmed.

Affirmed.

O'CONNELL, Judge (dissenting).

The court in the prevailing opinion of this case has enunciated the novel doctrine that compared with the Act of 1905, the Trade-Mark Act of 1946 provides a positive sanction for the complete, over-night appropriation of a long-established mark and well-known trade name previously used in the United States by another, and not abandoned, provided the appropriated mark or trade name under the Act of 1946 is applied by the applicant for registration to unrelated goods.

The case at bar thus reverses the field with respect to previous trade-mark decisions of this court, such as Radio Corp. of America v. Rayon Corp. of America [Radios and rayon fabrics], 139 F.2d 833, 31 C.C.P.A., Patents, 808; and Tidy-House Paper Products, Inc. v. Tidy House Products Co. [Unrelated households products, Appeal No. 5768], 189 F.2d 280, 38 C.C.P. A., Patents 1099, 1103. If the decision of the majority in the instant case is sound, and a revolutionary result has been actually attained because of a change in the law of trade-marks, many of our previous and out-

538

standing judgments must be reopened and reversed.

The precise point here in issue was determined with a directly contradictory result, however, by the court in Safeway Stores, Inc., v. Dunnell, 9 Cir., 1949, 172 F.2d 649, 655, certiorari denied, 337 U.S. 907, 69 S.Ct. 1049, 93 L.Ed. 1719. The Circuit Court of Appeals there cited numerous cases of this and other federal courts establishing that a trade name had been denied registration to an applicant under the Act of 1905 for use on unrelated goods and that—

"The principle of these cases, decided under the Trade Mark Act of February 20, 1905, is now incorporated in the Lanham Act, 15 U.S.C. 1051 et seq., 15 U.S.C.A. § 1051 et seq., which became effective July 1947, after the judgment in the district court and prior to the taking of this appeal and, under section 47(b), 60 Stat. 445, 15 U.S.C.A. § 1051 note, is here applicable. It prohibits registration as a trademark of a mark 'which so resembles * * * a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive the purchasers * * *.' 15 U.S.C. § 1052(d), 15 U.S.C.A. § 1052(d). Even though 'Safeway' was not appellant's 'name' within the literal language of the old statute, as we hold it is, it is plainly appellant's 'trade name' within the express language of the Lanham Act."

The majority in defining its position in the instant case directly overlooked the specific provisions of the Act of 1946 by which the registrant of an unabandoned trademark is entitled to effective protection by the courts, and the tribunals of the Patent Office, against acts of unfair competition;[2] that the term "trade name" employed in the statute is thereby defined to include the name of a corporation engaged in trade or commerce and capable of suing and being sued in a court of law;[3] and that the omission from the new act of the prohibitory corporate name provision of the Act of 1905 was to permit the advantages of registration to marks which constituted the dominant portion of a corporate name which that corporation had acquired through prior use.[4]

The record discloses that during the past forty years appellant has been the manufacturer of the "Alligator" brand of rainwear, also sportwear, ponchos, and miscellaneous items, such as tobacco pouches, aprons, and beauty caps; that the high quality of appellant's merchandise and the hundreds, even thousands, of distinguished merchants and dealers throughout the nation who have handled appellant's goods have given appellant's products a reputation for class and distinction; that appellant's nationwide advertisements in publications such as Life, Collier's and The Saturday Evening Post have been continued month after month, year in and year out; that appellant's dealers everywhere have likewise advertised appellant's goods very extensively in local newspapers and maintain elaborate window and floor displays which feature appellant's goods and the trade-mark "Alligator," which is also the name of the appellant corporation; and that appellant designed an original caricature and consistenly used the same for several years prior to 1946 in a trade-mark sense to lend distinctiveness and animation to its wide variety of advertising.

Section 45 of the Act of 1946 provides that an owner's mark shall be protected if it is placed in any manner on the goods or

2. Cf. Daphne Robert, "The New Trade-Mark Manual," pages 165–180, 191–192. See also sections 44(g), (h), and (i); Schechter Poultry Corp. v. United States, 295 U.S. 495, 532, 55 S.Ct. 837, 79 L. Ed. 1570; Alfred Dunhill of London, Inc., v. Dunhill Shirt Shop, Inc., D.C., 3 F.Supp. 487; Ronson Art Metal Works, Inc., v. Fink, 73 USPQ 124, 126; Tecla Corp. v. Tecla, Ltd., 15 T.M.R. 494; Derenberg, "The Patent Office as Guardian of the Public Interest in Trade-Mark Proceedings," Vol. 14, Law and Contemporary Problems, pages 288, 305–306, Duke University School of Law, 31 Journal of the Patent Office Society, 647, 675.

3. Sec. 45.

4. Robert, "The New Trade-Mark Manual," pages 57–58, citing Cracker Jack Company v. Aspergren Co., 15 T.M.R. 427.

on "the displays associated therewith." Appellant's mark, commercial signature, and caricature, actually used by appellant for years, are likewise entitled to protection at common law, apart from registration.[5] Reproduction herewith of the words and caricature of applicant's mark, together with appellant's commercial signature and advertising layout, all of which is collated from the exhibits of record, disclose the precise extent of the applicant's appropriation.

5. Lucky Heart Laboratories, Inc., v. Neumann, 154 F.2d 519, 520, 33 C.C.P.A., Patents, 1034; Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972.

One who pirates a trade-mark, like one who steals an invention or a copyrighted book or play, may be expected to introduce minor variations to conceal and shelter the piracy. The only significant difference between the contested matter here in issue is, as stated by the examiner, that appellant's original caricature is not like that of appellee's "carrying a cane and a cigarette and blowing smoke rings." Against such burlesque, the examiner and the commissioner at the outset should have applied the equitable principle of estoppel; a new and specific obligation with which each of them, as well as the courts, have been endowed by the provisions of the Act of 1946 so as to avoid the injustices which resulted under the limitations of the Act of 1905.[6]

While the use of cigarettes may bring real or imaginary comfort to hosts of people, such use is regarded by hosts of others as an unsanitary, repugnant habit, dangerous not only to the health of the smoker, by reason of inherent tar and nicotine, but also to property and timberlands throughout the country by reason of fire. The rule that a judge is not to shut his eyes to what everybody of intelligence knows, the Circuit Court for the District of Columbia held, applies for obvious reasons with peculiar force to proceedings in the Patent Office. In re Excelsior Shoe Co., 40 App. D.C. 480, 481.

A number of cases of actual and inevitable confusion in trade were established here by the record but were ignored. It is common knowledge that emergency rainwear is sold adjacent to or from the same shelves as cigarettes and tobacco in chain stores such as United, Schulte, Whelan, and Peoples. Furthermore, no one exercising authority in the matter should reject the authorities hereinbefore cited by appellant whereby courts of competent jurisdiction have previously established that smoker's supplies on the one hand and clothing and sportswear on the other may have an almost identical relationship.[7]

The majority correctly holds that use of the bewildering or "bugbear" term goods "of the same descriptive properties,"[8] has been abolished by the Act of 1946. However, for the abolished term, and on the same basis, use of the new and unauthorized idea of "closely related" goods may not be substituted as the test for confusing similarity. The phraseology employed in the Trade-Mark Act of 1905, namely, goods "of the same descriptive properties," and "goods of the same class" have been heretofore judicially determined to be related goods within the purview of the statute. Philadelphia Inquirer Co. v. Coe, 77 U.S. App.D.C. 39, 133 F.2d 385, 386, 389, certiorari denied, 318 U.S. 793, 63 S.Ct. 993, 87 L.Ed. 1158. It would appear therefore that under the procedure established here by the majority the court in reality adheres to the application of the provisions of the Act of 1905. Compare Muralo Co. v. National Lead Co., 36 App.D.C. 541, and White Company v. Vita-Var Corporation, 182 F.2d 217, 37 C.C.P.A., Patents, 1039.

Perhaps, as some crusader and certain government officials suggested in the halls of Congress during the hearings regarding the enactment of the Act of 1946,[9] a company which has owned a trade-mark of world-wide reputation for forty or fifty years has had the mark long enough and should be required now to share it with others who don't have the money to advertise or market the same kind of goods under the same trade-mark. That concept was wholly rejected by Congress, however, and the new Act must now be enforced by the

6. "Sec. 19. In all inter partes proceedings, equitable principles of laches, estoppel, and acquiescence, where applicable may be considered and applied. The provisions of this section shall also govern proceedings heretofore begun in the Patent Office and not finally determined." See also Robert, "The New Trade-Mark Manual," pages 220–221.

7. Alfred Dunhill of London, Inc. v. Dunhill Shirt Shop, Inc., D.C., 3 F.Supp. 487; Ronson Art Metal Works, Inc. v. Fink, 73 USPQ 124. See also Safeway Stores, Inc. v. Dunnell, 9 Cir., 172 F.2d 649.

8. Greyhound Corp. v. Robinson Houchin Corp., 89 USPQ 621; Robert, "The New Trade-Mark Manual," pages 58–59.

9. "Introduction," by Edward S. Rogers, page xi, Robert, "The New Trade-Mark Manual."

courts as the provisions thereof were written and incorporated into the law.

Appellant's mark is nowise descriptive of the goods with which it is used and under the law is a strong and fanciful mark entitled to broad protection. Sunbeam Furniture Corp. v. Sunbeam Corp., 9 Cir., 191 F. 2d 141; Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972. However, appellant apparently must have recourse to the United States District Court in order to obtain relief. John Morrell & Co. v. Doyle, 7 Cir., 97 F.2d 232.

For the reasons hereinbefore stated, the decision of the Commissioner of Patents should be reversed.