## YALE ELECTRIC CORPORATION v. ROBERTSON, Commissioner of Patents, et al.

District Court, D. Connecticut.    August 10, 1927.

### No. 1854.

**1. Trade-marks and trade-names and unfair competition ⬅21—Registration by complainant of the word "Yale" as a trade-mark held properly refused.**

Complainant, manufacturer of flashlights, dry cells, and storage batteries, in 1922 adopted as a part of its corporate name and sought to register as its trade-mark, the word "Yale," printed in the same style and with similar surrounding lines, so as to make it closely resemble the word "Yale" as used for many years by defendant and its predecessors as a trade-mark for locks and keys, and which had become identified by the public with its products. The products of both parties are sold in hardware stores generally. *Held*, that complainant was properly refused such registration.

**2. Trade-marks and trade-names and unfair competition ⬅70(I)—Complainant, by using defendant's trade-mark and simulating its advertising, held chargeable with unfair competition.**

Complainant by using not only defendant's well-known trade-mark "Yale," but also similar advertising of its goods as "Yale Products," "Yale Line," "Yale Quality," etc., *held* chargeable with unfair competition.

**3. Trade-marks and trade-names and unfair competition ⊚⇒67—One purpose of statute is protection of public against confusion of products and the source of products.**

The purpose of the trade-mark statute is not only to protect manufacturers and dealers against unfair competition, but also to protect the public against confusion of products and also the source from which they came.

**4. Trade-marks and trade-names and unfair competition ⊚⇒93(1)—Doubt as to confusion caused by unfair practice to be resolved against newcomer in field.**

If there is a doubt whether an alleged unfair practice will produce confusion with the public as to products or their source, it is the duty of the court to resolve the doubt against the newcomer in the field.

In Equity. Suit by the Yale Electric Corporation against Thomas E. Robertson, Commissioner of Patents, and the Yale & Towne Manufacturing Company. Decree dismissing bill, and granting injunction on counterclaim.

William S. Pritchard, of New York City, for plaintiff.

Archibald Cox, Louis H. Porter, and F. Carroll Taylor, all of New York City, and Frederick C. Taylor, of Stamford, Conn., for defendants.

THOMAS, District Judge. This suit, which is to compel the registration of a trade-mark, arose under the trade-mark laws of the United States (section 9 of the Act of February 20, 1905 [15 USCA § 89]), and was brought under section 4915 of the Revised Statutes of the United States (35 USCA § 63; Comp. St. § 9460) and also under section 24, subsection 7, of the Judicial Code (28 USCA § 41; Comp. St. § 991).

The plaintiff, Yale Electric Corporation, is a New York corporation having its principal place of business in the borough of Brooklyn, city and state of New York, where it is engaged in the manufacture and sale of flashlights and dry cells, and in the sale of storage batteries.

The defendant Thomas E. Robertson is the United States Commissioner of Patents at Washington, D. C. The defendant the Yale & Towne Manufacturing Company, the real party in interest, is a Connecticut corporation having its principal place of business in the city of Stamford, state of Connecticut, where it manufactures locks, builders' hardware, chain hoists, and small electric trucks for industrial purposes and other articles and appliances.

The defendant Thomas E. Robertson has appeared and in his answer states that he has no particular adverse interest in this case;

that the Yale & Towne Manufacturing Company is the real party in interest; that he is informed that the company will defend this suit, and so does not deem it necessary to further answer, or take any active part in the proceedings. The defendant the Yale & Towne Manufacturing Company has filed its answer, together with a counterclaim, and has actively defended.

[1] Plaintiff was incorporated in 1912 as the International Electric Novelty Company. In 1919 it changed its name to Franco Electric Corporation. In 1922 it changed its name to Yale Electric Corporation, and began selling its products under the name "Yale." On November 7, 1922, plaintiff, in the manner prescribed by law, presented to the United States Patent Office its application, serial No. 171,-718, for registration of the word "Yale," inclosed in an ellipse and the whole inclosed in an irregular octagon, as a trade-mark for batteries, battery cells, flashlights, lighting outfits, such as are particularly adapted for Christmas trees and similar decorative purposes. The application was allowed by the Examiner of Trade-Marks, and the trade-mark was published in the Official Gazette on January 9, 1923.

On April 4, 1923, the defendant the Yale & Towne Manufacturing Company filed an opposition to the registration of said trade-mark, being the registrant of "Yale" as a trade-mark for locks and keys, registered in the year 1907, and for various articles of hardware, registered severally in the years 1909, 1914, and 1922. Testimony having been taken by both parties to said opposition proceedings, the case was submitted on the pleadings and evidence and argued by counsel for the parties before the Examiner of Trade-Mark Interferences. On November 12, 1924, the Examiner rendered a decision wherein he sustained the opposition and held that plaintiff was not entitled to the registration. Thereafter the plaintiff appealed from the adverse decision of the Examiner of Trade-Mark Interferences to the Commissioner of Patents, who, on the 1st day of April, 1925, rendered a decision wherein he affirmed the decision of the Examiner and sustained the opposition.

On June 5, 1925, plaintiff appealed from the decision of the Commissioner of Patents to the Court of Appeals of the District of Columbia, which court, on or about the 5th day of April, 1926, affirmed the decision of the Commissioner of Patents and sustained the opposition of the Yale & Towne Manufacturing Company, 56 App. D. C. 242, 12 F. (2d) 183. Thereupon suit was brought in

this court, and the record in the Court of Appeals of the District of Columbia has been made part of the record in the case at bar.

In 1865, about 60 years before the institution of this suit, Linus Yale, Jr., started a business which, in 1868, was turned over to a Connecticut corporation, Yale Lock Manufacturing Company, which continued the business until some time in 1882, when it was turned over to this defendant, incorporated under a special charter under the name of Yale Lock Manufacturing Company, which name in 1883 was changed to the Yale & Towne Manufacturing Company. Linus Yale, Sr., made bank locks and other locks at Newport, N. Y., for some years prior to his death in 1857, when his business was taken over by Harris & Tyler, who continued it more or less until 1861, when they were succeeded by Harris Bros., who continued it, more or less, until 1873, when it was sold to one Sullivan, who moved what was left of it to Albany, N. Y. In 1905 it was transferred to one Fellows, who was acting in the interest of the defendant, who in 1911 formally transferred it to defendant. After the death of Linus Yale, Sr., the business was small and local, and after 1873 no locks were manufactured by his successors; the business then being limited to repairs and replacements. The defendant is therefore the owner of all the rights of both concerns, and the case at bar is consequently governed by the rule laid down by Judge Lacombe in Lever Brothers v. Pasfield (C. C.) 88 F. 484.

The goods originally made and sold in dedefendant's business were bank locks opened by keys, exhibiting remarkable ingenuity in intricate mechanism to prevent picking, and correspondingly fine workmanship, so that a single "Yale" double treasury lock sold for about $1,000 in those days. C. C. A. Record, p. 309. The dominant characteristics of the "Yale" manufacture were remarkable skill in selecting and devising superior constructions, as well as perfection of workmanship in giving effect to such construction in metal or hard substances, as distinguished from textiles, or rubber, or food, or candy, or articles not fabricated.

Back in the days of bank locks, the combination of those characteristics made the "Yale" manufacture known as superior throughout the world. When small locks were added, the same characteristics were embodied in them with the same result. An article bearing the word "Yale" commands a higher price than the same article without that word on it.

[2] The use of the word "Yale" by the plaintiff is purely arbitrary. It is not the name of any one connected with the plaintiff's organization. It further appears from the record that both the plaintiff and defendant use the word "Yale" in the same block print; both emphasize the word where it is used in the text of advertisements; both use it inclosed in a panel conspicuous at the head of their advertisements or in the border; both constantly refer to their goods as "Yale Products," "Yale Line," "Yale Quality," "Yale on Guard;" both refer to their products as on sale at all hardware stores; advertisements of both appear in hardware trade publications, and in some magazines of general circulation, in similar general makeup; and the products of both plaintiff and defendant are sold in the same stores.

Plaintiff argues that the law which applies to the instant case has been settled by the Supreme Court of the United States in the so-called "Simplex Case," American Steel Foundries v. Robertson, Commissioner of Patents, and Simplex Electric Heating Co., 269 U. S. 372, 46 S. Ct. 160; 70 L. Ed. 317—the contention being, inter alia, that the plaintiff has appropriated less than the whole name of the defendant; that it has adopted and used a trade-mark on its goods, which is not of the same description as that of the defendant; that the word "Yale" comprises the whole or part of about 50 registrations by nearly as many different parties upon many kinds of merchandise; that the single word "Yale" alone is identified with Yale University; that it is not shown that the word "Yale" is any more calculated to denote to the purchasing public the Yale & Towne Manufacturing Company than other corporations, the corporate name of which contains the word "Yale"; that the word "Yale" has been used in such wide and varied ways in this country, not only as a trade-mark, but as a part of a firm or a corporate name, and that everybody has considered something more than the word "Yale" necessary to identify a corporation; and that from the evidence the use of the word "Yale" as a trade-mark on goods of the plaintiff has not and will not deceive or confuse the public, and has not injured the defendant the Yale & Towne Manufacturing Company, and will not injure any other corporation.

[3, 4] Of course, if these contentions were all sound and true, the case at bar would come under the ruling in the Simplex Case. But the record shows, as already noted, that the goods of both plaintiff and defendant are sold in the same stores, more particularly in hardware stores, and presumably to the same class of purchasers. Of course, the prospective

purchaser of locks and keys would not likely be led by the confusion of marks to purchase flashlights or batteries, but might be led to purchase flashlights or batteries on the strength of the standing and reputation of the locks and keys bearing the same trademark. Thus confusion would result, and not only the maker of the locks and keys, but the public as well, would be deprived of the protection which it was obviously the purpose of the trade-mark statute to give. And if it be found that there is doubt as to whether such confusion will exist, it is the duty of the court to resolve that doubt against the newcomer in the field. Waltke & Co. v. Schafer & Co., 49 App. D. C. 254, 263 F. 650.

Furthermore, even if the Patent Office, in its arbitrary classification, does not regard the goods of plaintiff and defendant of the same descriptive properties, the test here is not in the likelihood of confusing the products, but the source from which they come. Williams v. Kern & Sons, 47 App. D. C. 441. However, I conclude that they are sufficiently alike to cause confusion or mistake in the public mind, if offered for sale under the same mark.

From the proofs contained in the record it cannot be disputed that the word "Yale" is and long has been the salient and characteristic feature of defendant's corporate name, and the well-known trade-mark under which it has advertised and marketed its products. The fact that the same word occurs in the names of many other corporations, or is the name of many individuals, has no bearing on the issue in the case at bar. The real question to be decided is: What does the word "Yale" signify in the hardware trade? Without doubt it identifies the Yale & Towne Manufacturing Company and its products. Nor do I think it conclusive that the Yale & Towne Manufacturing Company does not make flashlights or batteries, as this is a mere detail of evidence to be taken with other evidence in the case.

Such being my conclusions, it must be held that plaintiff should be restricted in the use of the word "Yale," because its goods are sold in the same establishment and practically over the same counter with the goods of defendant. Mr. Justice Sutherland, speaking for the Supreme Court in the Simplex Case, on page 381 (46 S. Ct. 162), said:

"The general doctrine is that equity, not only will enjoin the appropriation and use of a trade-mark or trade-name where it is completely identical with the name of the corporation, but will enjoin such appropriation and use where the resemblance is so close as to be likely to produce confusion as to such iden-

tity, to the injury of the corporation to which the name belongs. Cape May Yacht Club v. Cape May Yacht & Country Club, 81 N. J. Eq. 454, 458 [86 A. 972]; Armington & Sims v. Palmer, 21 R. I. 109, 115 [42 A. 308, 43 L. R. A. 95, 79 Am. St. Rep. 786]. Judicial interference will depend upon the facts proved and found in each case. Hendriks v. Montagu, L. R. 17 Ch. Div. 638, 648; Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 469–471 [39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769]."

From this record only one conclusion can be reached as to the reason for the change in the corporate name of the plaintiff, and that is that the name of the Yale Electric Corporation was adopted for the sole purpose of enabling the plaintiff to palm off its goods as those of the defendant. This conclusion is borne out by the fact that a Chinese copy of defendant's trade-mark was adopted and used, its advertisements copied as nearly as possible, and its slogans such as "Yale Products," "Yale Line," "Yale Quality," "Yale on Guard," literally taken over. These acts constitute a case of unfair competition, and defendant is entitled to relief against the plaintiff. The fact that defendant has not shown any actual damages simply means that it is not entitled to an accounting.

For the reasons given, the bill is dismissed. Defendant may have a decree for an injunction according to the tenor of this decision, together with costs to abide the event.

Decree accordingly.