37 C.C.P.A. (Patents)

## WHITE CO. v. VITA–VAR CORPORATION.

**Patent Appeals No. 5663.**

United States Court of Customs and Patent Appeals.

May 9, 1950.

218

Karl W. Flocks, Washington, D. C., for appellant.

S. Michael Ress, New York City, for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL and JOHNSON, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision rendered by the Assistant Commissioner of Patents, acting for the Commissioner, in a trade-mark opposition proceeding, 76 US PQ 267.

The decision appealed from reversed the decision of the Examiner of Interferences who, dismissing the notice of opposition of Vita-Var Corporation, held that The White Company was entitled to have registered the word "Hydrolite" as a trade-mark for "Casein Wall Paint," in the application for registration of which use was asserted "since July 1, 1935."

The opposition of Vita-Var Corporation, a corporation of the State of New Jersey, is predicated upon its ownership, by assignment of a predecessor (The Goheen Corporation of New Jersey) and a subsequent renewal to itself, on October 17, 1942, of a registration of the word "Hydrolite" as a trade-mark for "waterproofing compound for concrete, plaster, and stucco."

The certificate of registration states that the mark had been used continuously by Vita-Var Corporation and its predecessor "since 1900," and there is no serious dispute as to that date.

So, priority of use of "Hydrolite" as a trade-mark is awardable to Vita-Var Corporation, but such trade-mark use always has been limited to "waterproofing compound for concrete, plaster, and stucco."

The Vita-Var Corporation's notice of opposition alleges that it manufactures "paints, varnishes, enamels, lacquers, waterproofing products and kindred products," including "wall paints and casein paints and other products similar to those" as to which The White Company seeks to register "Hydrolite" as a trade-mark, but does not claim registration or use of "Hydrolite" upon any product except the waterproofing material.

In its answer The White Company admitted the use since 1920 by Vita-Var Corporation and its predecessor of the word "Hydrolite" on "concrete waterproofing material which is a material adapted to be mixed with the concrete so that when the concrete 'sets' it is 'waterproofed'" but, stating that it was not informed as to the manufacture by Vita-Var Corporation of other products, denied such manufacture. No proof was thereafter presented that the Vita-Var Corporation manufactured "casein paints" as alleged in its notice of opposition, nor any proof presented that it had ever used, or sought to have registered, "Hydrolite" as a trade-mark for "casein paints" or "casein wall paints."

The Examiner of Interferences in the course of his decision made findings of fact as follows:

"The casein wall paint described in the application [of The White Company] is a butter milk product used to decorate the walls and ceilings of rooms in a variety of tints or shades of color. Water constitutes the liquid component of such paint. The product has no water proofing characteristics and the record does not show that it has any uses other than in interior dec-

orating or that it is sold to other than interior decorators and the usual retail outlets for paints used in interior decoration.

"The waterproofing compound manufactured by the opposer [Vita-Var Corporation] has distinctly different physical characteristics and uses, being a chemical in powder form which is designed to be mixed with the normal ingredients of concrete, plaster, or stucco to produce, when the mixture is set, respectively waterproof concrete, waterproof plaster, or waterproof stucco. As the opposer's labels indicate, this compound also may be mixed with cement mortar which mixture may then be applied as a waterproof coating to old concrete. In such cases, it is recommended that the old concrete be mechanically roughened and chipped to produce firm adherence of the coating. The compound, however, is not *per se* a coating material and since it is neither a coating nor a carrier of pigment it is not a paint. Nor is it a substance which would readily be physically confused with a paint.

"The testimony further indicates that the opposer's product is generally sold to industrial users who require it in such large quantities that it is not kept in stock but is manufactured and supplied as needed; and there is nothing in the record to establish that such goods and casein wall paint would be sold through the same trade outlets."

After so finding the facts, the Examiner of Interferences continued: "Upon the record submitted it accordingly appears that the respective goods here involved possess different essential characteristics, are used for dissimilar purposes, and are sold through different channels of trade to different classes of purchasers. The examiner is persuaded under these circumstances that the purchasers would not have occasion reasonably to assume that the goods have a common personal origin. These goods are therefore deemed to be of different descriptive properties within the meaning of the statute."

It may be said here that the correctness of the findings of fact by the Examiner of Interferences was not challenged by Vita-Var Corporation below, nor is it challenged here.

It appears that before the Examiner of Interferences and before the Assistant Commissioner as before us Vita-Var Corporation argued (1) that the description of goods contained in its registration (that is, "waterproofing compound for concrete, plaster, and stucco") is sufficiently broad to comprehend a coating composition falling within the general classification of paints and painters' materials to which the casein product of The White Company pertains, and (2) that Vita-Var Corporation has the right to extend its use of the word "Hydrolite" as a trade-mark to the field of paints, including casein wall paint, and that it should not be embarrassed by having to meet a mark registered to another whenever it shall choose to extend its business by manufacturing and selling, or otherwise engaging in the casein wall paint business

In ruling upon the arguments so made the Examiner of Interferences cited decisions of this court in the cases of Pratt & Lambert, Inc., v. Chapman & Rodgers, Inc., 136 F.2d 909, 30 C.C.P.A., Patents, 1228; and Goldsmith Bros. v. Atlas Supply Co., 148 F.2d 1016, 1017, 32 C.C.P.A., Patents, 1001.

In the first of those decisions this court, speaking through Hatfield, J., held (1) that insecticides differed so widely in composition and use from the composition and use of paints, varnishes, etc., that the goods of the respective parties did not possess the same descriptive properties, and (2) that the manufacture, sale, and use of insecticides by manufacturers of paints, varnishes, etc., was not within the natural and legitimate extension of business of such manufacturers. We there affirmed the decision of the Commissioner of Patents reversing that of the Examiner of Interferences. The mark involved in the contest was the numeral "61."

In the second of the decisions, speaking through Jackson, J., we upheld concurring decisions of the tribunals of the Patent Office granting registration to Atlas Supply Company of the notation "Coldex" for use as a trade-mark on an automobile anti-

freeze compound over the objection of Goldsmith Bros., a mercantile concern, who were using the registered notation "Goldex" on chemicals, medicines, pharmaceutical preparations and toilet preparations but not on antifreeze preparations which they were selling in a department for automobile accessories separate from its drug department. We there regarded "Coldex" and "Goldex" as being substantially identical, but deemed the goods to be of distinctly different descriptive properties. With respect to the claim of Goldsmith Bros. respecting the right of business extension, we said: "Appellant urges that in the natural or normal extension of its business it should be able to apply its mark to an antifreeze preparation of its own. We do not think that such extension would be either natural or normal, but would be extending into an unrelated field involving different trade channels, manner of packaging and sale, and a different class of purchasers. Pratt & Lambert, Inc. v. Chapman & Rodgers, Inc., 136 F.2d 909, 30 C.C.P.A., Patents, 1228."

The foregoing decisions seem to be apposite here, but the Assistant Commissionre did not follow them as to the material question here involved. He deemed it proper to rely upon decisions made by the United States Circuit Court of Appeals of the Second Circuit in two proceedings in equity, Yale Electric Corporation v. Robertson, United States Commissioner of Patents, et al., 2 Cir., 1928, 26 F.2d 972; and S. C. Johnson & Son, Inc., v. Johnson, 2 Cir., 116 F.2d 427, involving questions of (1) unfair competition, (2) use of names as trade-marks, (3) descriptive properties of the goods involved in the respective cases, and (4), in the first case, the question of the right of Yale Electric Corporation to compel the Commissioner of Patents (Robertson) to register "Yale" as a trade-mark for electric flash-light torches and their batteries.

We quote from the decision of the Assistant Commissioner the following:

"In my opinion, the Examiner of Interferences has applied too narrow a test in determining the issue of same descriptive properties in the present case. Even though opposer's compound and applicant's paints may be traded through different channels of trade and may be specifically different in their properties, it still remains true that they are at least as closely related as electric batteries and keys and locks were held to be in the Yale case. Yale Electric Corporation v. Robertson, 2 Cir., 1928, 26 F.2d 972. The Court of Customs and Patent Appeals in the Goheen case, supra, [Goheen Corp. v. White Co., 126 F.2d 481, 29 C.C.P.A., Patents, 926], expressly stated that opposer and its predecessor had used the mark "Hydrolite" for about forty years and that opposer was also admittedly a manufacturer of paint, although it had not yet applied this trade-mark to a paint product. It seems to me, therefore, that the present case falls within the general principle which was aptly stated by Judge Learned Hand in S. C. Johnson & Son, Inc., v. Johnson, 2 Cir., 116 F.2d 427, in the following language:

" ' * * * It is true that a merchant who has sold one kind of goods, sometimes finds himself driven to add other "lines" in order to hold or develop his existing market; in such cases he has a legitimate present interest in preserving his indentity in the ancillary market, which he cannot do, if others make his name equivocal there.'

"In my opinion, there is more in the present case 'than the desire to post the new market as a possible preserve' which opposer may later choose to exploit. It seems to me that a nationally known paint manufacturer who has been using a well established trade-mark not on a paint but on a product as closely related as a waterproofing compound in powder form should be held entitled to protection and registration of the word for all articles coming within this general class even though one material may, for purposes of Patent Office classification, be classified as construction material, while the other falls within the category of paints or paint materials."

The decision in the Goheen case referred to in the foregoing quotation will be found in 126 F.2d 481, 29 C.C.P.A., Patents, 926.

The only part of it deemed to be of any importance here is the holding that "Hydrolite" is not descriptive of the waterproofing compound on which Vita-Var Corporation, successor of Goheen Corporation, then used it, as now it uses it, as a trade-mark, wherefore the decision of the Commissioner of Patents upholding the petition of The White Company, appellee there, to cancel the mark on the ground of descriptiveness was reversed.

We turn our attention to the specific phraseology of the decision of the Assistant Commissioner reading: "In my opinion, the Examiner of Interferences has applied too narrow a test in determining the issue of same descriptive properties in the present case. Even though opposer's compound and applicant's paints may be traded through different channels of trade and may be specifically different in their properties, it still remains true that they are at least as closely related as electric batteries and keys and locks were held to be in the Yale case [supra]."

The Assistant Commissioner evidently overlooked the fact that the United States Circuit Court of Appeals instead of holding that electric flash-light torches and their batteries were of the same descriptive properties as keys and locks, specifically held, in connection with its determination of the question of registration, that the goods of the respective parties were not of the same descriptive properties in the colloquial sense.

To understand fully the decision of the United States Circuit Court of Appeals, it will be found helpful to study the decision of the United States District Court of Connecticut, Yale Electric Corporation v. Robertson, United States Commissioner of Patents, et al., 2 Cir., 21 F.2d 467, from which decision the appeal to the United States Circuit Court of Appeals of the Second Circuit was taken.

From the respective decisions it is apparent that the United States District Court and the United States Circuit Court of Appeals treated the case as one of unfair competition based upon use of "Yale," and held that the Yale Electric Corporation should not be permitted use of the mark except in the limited manner indicated in the decision of the United States Circuit Court of Appeals. Having so held, the United States Circuit Court of Appeals said [26 F.2d 974]: "There remains the question of registration, the goods not being of the 'same descriptive properties' in the colloquial sense. It would plainly be a fatuity to decree the registration of a mark whose use another could at once prevent."

So, logically, the United States Circuit Court of Appeals sustained the decision of the United States District Court refusing to direct the Commissioner of Patents to register the mark.

The case of S. C. Johnson & Son, Inc. v. Johnson, supra, involved only a question of unfair competition based upon use of the name Johnson. No question of "descriptive properties" was there passed upon, nor was any question of the right to register a mark involved. We fail to discern the relevancy of that decision to the issue involved in the instant case.

The here pertinent phraseology of the Trade-Mark Registration Act of February 20, 1905, is embraced in Sec. 5, 33 Stat. 725, U.S.C., title 15, sec. 85, reading: "* * * no mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trade-mark * * * Provided, That trade-marks which are identical with a registered or known trade-mark owned and in use by another, and appropriated to merchandise of the same descriptive properties * * * shall not be registered: * * *"

The waterproofing compound upon which Vita-Var Corporation uses its registered mark "Hydrolite" obviously is entirely different in its characteristics and properties from the casein wall paint upon which The White Company is using the same mark. This appears from the unchallenged findings of fact made by the Examiner of Interferences.

Ours is only a statutory jurisdiction. We may not concern ourselves with the ques-

tion of unfair competition in this proceeding.

As a matter of law, we feel constrained to hold that the decision of the Assistant Commissioner must be reversed. It is so ordered.

Reversed.

O'CONNELL, J., dissents.