39 C.C.P.A.(Patents)
PEP BOYS—MANNY, MOE AND JACK
v. EDWIN F. GUTH CO.

Patent Appeal No. 5864.

United States Court of Customs
and Patent Appeals.

June 24, 1952.

O'Connell, J., dissented.

Harvey B. Jacobson, Washington, D. C.
(John H. Lewis, Jr., Washington, D. C.,
of counsel), for appellant.

Koenig and Pope, St. Louis, Mo. (John
D. Pope III, St. Louis, Mo., of counsel),
for appellee.

Before GARRETT, Chief Judge, and
JACKSON, O'CONNELL, JOHNSON,
and WORLEY, Judges.

JOHNSON, Judge.

This is an appeal from the decision of
the Commissioner of Patents, speaking
through the Assistant Commissioner, 88
USPQ 24, affirming the decision of the
Examiner of Trade-Mark Interferences
dismissing appellant's notice of opposition
to the registration by appellee, under the
Trade-Mark Act of 1946, commonly known
as the Lanham Act, 15 U.S.C.A. § 1051 et
seq., of the word "Cadet" as a trade-mark
for electric lighting fixtures.

Appellee alleged July 1, 1944 as the date
of first use of the involved mark in com-
merce among the several states. The ap-
plication was examined and passed for
publication pursuant to section 2 of the
Trade-Mark Act of 1946, and the mark was
duly published in the Official Gazette on
August 10, 1948. On August 27, 1948, ap-
pellant filed its notice of opposition to the
said registration.

In its notice of opposition, appellant alleged that it is the owner of the trade-mark "Cadet" for storage batteries, which mark had been registered in the United States Patent Office on December 10, 1929, and duly republished on July 6, 1948, under the provisions of the Trade-Mark Act of 1946; that the trade-mark sought to be registered by appellee is identical with that of appellant; that if appellee's mark is registered it would be a source of damage and injury to appellant and that the concurrent use of the respective marks would cause confusion or mistake or deceive purchasers as to the source of the products. There is no dispute that this registration is the property of appellant and that it has been properly renewed as alleged.

Appellant also alleged, in the notice of opposition, that it has been in the business of selling batteries and other automotive supplies for many years prior to July 1, 1944, but did not allege registration or use of the trade-mark "Cadet" on any product other than storage batteries.

Both parties filed stipulated statements in lieu of testimony providing that the "stipulated statements constitute matter which would have been testified to under oath by witnesses" had testimony been taken.

■ It appears from the stipulated evidence that appellant owns and operates 81 retail stores and in addition sells its products through 15 additional stores; that it manufactures and sells automobile storage batteries and many automobile parts and accessories, also electrical household light bulbs, electrical fuses, plugs and sockets, extension cords, and various other items; that in all its stores it sells more than 1,000 different items; that it has spent large sums in advertising its "Cadet" storage batteries; and that it has applied its mark "Cadet" to dry cell batteries, automobile electrical bulb kits, electric automobile bulbs and distilled water for storage batteries. However, since the notice of opposition did not allege use of the mark on any product other than storage batteries, no other product can be considered in this proceeding. Norma-Hoffmann Bearing Corp. v. Hufnagel, 123 F.2d 648, 29 C.C.P.A., Patents, 732, Goldsmith Bros. v. Atlas Supply Co., 148 F.2d 1016, 32 C.C.P.A., Patents, 1001.

The stipulated evidence shows that appellee has been in the business of manufacturing and selling electric lighting fixtures since 1902; that it uses the mark "Cadet" only on electric lighting fixtures which are mounted on the ceiling; that it sells these fixtures at wholesale to wholesale electrical supply jobbers (also called distributors and dealers) who ordinarily sell them to contractors; and that it does not sell these fixtures at retail or over the counter.

■ Under section 5 of the Trade-Mark Act of 1905, 15 U.S.C. § 85, in order that a prior mark could be considered as a bar to registration of another mark, it was not only necessary that the marks be identical or confusingly similar, but it was also necessary that the latter mark be applied to "merchandise of the same descriptive properties" as was the former mark. The term "same descriptive properties" has been omitted from section 2 of the Act of 1946, which section contains provisions corresponding to section 5 of the Act of 1905. Section 2 of the Act of 1946 provides that no trade-mark shall be refused registration on account of its nature unless it—

"(d) Consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, *when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers: * * * .*" [Italics supplied.]

In our opinion, the significance of this change in the statutory language is to eliminate as an absolute prerequisite that the goods be of the same descriptive properties in order that registration of a mark may be properly refused. The ultimate test under the new Act is the likelihood of confusion or mistake or the deception of purchasers. However, this does not mean that the similarity or dissimilarity of the descriptive properties of the goods is no longer a factor to be considered. It should be considered in every case of this type since it is logically a factor of considerable import-

ance to be given much weight in reaching the ultimate conclusion as to whether or not there is likelihood of confusion, mistake or deception of purchasers when the mark sought to be registered is applied to the goods of the applicant. Thus, refusal of registration may be required in cases where there is likelihood of confusion, mistake, or deception even though the goods may technically, or in an abstract sense, fall in different categories. On the other hand, there may be situations where registration is permissible in the case of goods which technically fall within the same broad general class, but as to which it is apparent that confusion is unlikely.

We discussed this change in the statutory language in the recent case of Alligator Company v. Larus & Brother Company, Inc., 196 F.2d 532, 39 C.C.P.A., Patents, ——.

It will be noted that both parties make use of the identical trade-mark. There being no dispute as to appellant's priority of use, which is established by the record, the only question here presented is whether the respective goods of the parties on which the marks are used are such as to be likely to cause confusion in the minds of purchasers as to the source of origin.

█ It appears to us that electric lighting fixtures and storage batteries are not associated in use, and from the stipulation of facts it appears that they are not handled by the same type of dealers or sold in the same manner. We believe that those who purchase electric lighting fixtures should properly be classed as discriminating buyers. We think such electric lighting fixtures are generally bought because of their decorative appearance or their lighting utility, and that the size and design is selected which will best fit into the decorative or lighting scheme contemplated by the purchaser. On the other hand, it seems to us that storage batteries are purchased for their well-known use in vehicles and for like applications and not because of their appearance or any of the other considerations involved in the purchase of a lighting fixture.

It is our opinion that appellant's storage batteries differ so widely in use and characteristics which govern choice by a purchaser, and in all other respects, from the electric lighting fixtures of appellee that the use of identical marks on these respective products would not be likely to cause confusion, or mistake, or to deceive purchasers as to the source thereof. See Williams Oil-O-Matic Heating Corp. v. Westinghouse Electric & Mfg. Co., 62 F.2d 378, 20 C.C.P.A., Patents, 775; White Company v. Vita-Var Corporation, 182 F.2d 217, 37 C.C.P.A., Patents, 1039, 86 U.S.P.Q. 84.

The decision of the Assistant Commissioner sustaining that of the examiner dismissing appellant's opposition and holding appellee entitled to the registration sought is affirmed.

Affirmed.

JACKSON, Judge, sat during the argument in this case but retired April 1, 1952, before the opinion was fully prepared. He was recalled in conformity with Section 294(c)(d), Title 28 U.S.C. to participate in the decision and did so.

O'CONNELL, Judge (dissenting).

The change wrought by the Trade-Mark Act of 1946 does not give to the first user of a mark a wholly unjustified power to preempt new markets. S. C. Johnson & Son v. Johnson, 2 Cir., 175 F.2d 176, certiorari denied, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527. However, for a period of more than 20 years appellant has applied its mark "Cadet" not only in the sale of storage batteries but also in the concurrent sale of numerous related articles used for lighting purposes.

That fact has been explicitly eliminated from consideration by the majority, despite the stipulation of record entered into by appellee before the tribunals of the Patent Office to the effect:

"2. That the Opposer is in the business of the manufacture and selling of automobile parts and accessories, automobile storage batteries, electrical automobile bulbs, distilled water for storage batteries, battery cables and connectors, flashlight batteries, dry cell batteries, *electrical household light bulbs, both incandescent and fluores-*

*cent types, electrical fuses, household electrical male and female plugs, household electric double plugs and light sockets, household electrical extension cords, household electrical night light assemblies, household electric iron cords, household electrical wire,* * *.

"6. That the trade-mark 'Cadet' has been applied to, in addition to storage batteries as referred to in paragraph 5, *dry cell batteries, automobile electrical bulb kits and electric automobile bulbs and distilled water for storage batteries for a date long prior to the date of use claimed* by the applicant in this proceeding and that said products have been sold by the Opposer throughout the territories covered by Opposer's retail outlet stores and affiliated stores.

"7. That 'Cadet' storage batteries and the products referred to in the preceding paragraph have been extensively advertised by means of billboard displays, store displays, catalogs and newspaper and radio advertising throughout the various areas of sales of Opposer's products." (Italics supplied.)

The interests of the purchasing public in their reliance upon brand names or marks, through caprice or otherwise, is an important factor which must be given consideration in the case at bar. Mishawaka Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381; rehearing denied, 316 U.S. 712, 62 S.Ct. 1287, 86 L.Ed. 1777; Fed. Trade Comm. v. Algoma Lumber Co., 291 U.S. 67, 78, 290 U.S. 607, 78 L.Ed. 532; Sunbeam Furniture Corp. v. Sunbeam Corp., 9 Cir., 191 F.2d 141.

Since appellee because of its stipulation could not have been taken by surprise before the tribunals of the Patent Office, and since in an opposition proceeding the function of the notice of opposition nowise requires the opposer to set forth therein the details of the proof relied upon, the ruling of the majority on the point in question appears to me to be erroneous. Tidy-House Paper Products, Inc. v. Tidy House Products Co., 189 F.2d 280, 38 C.C.P.A., Patents, 1099; Sparklets Corporation v. Walter Kidde Sales Co., 104 F.2d 396, 26 C.C.P.A., Patents, 1342; Coschocton Glove Co. v. Buckeye Glove Co., 90 F.2d 660, 24 C.C.P.A., Patents, 1338.

Such action by the majority has resulted not only in the blackout of an essential issue before this court but also will result in a judgment injurious to appellant and the paramount public interest. In that connection it is noted appellee concedes in its brief that "an electric lighting fixture has for its function the provision of a suitable housing for a light bulb and the control of illumination."

The majority opinion discusses the point that the term "same descriptive properties" of section 5 of the Act of 1905 has been omitted from section 2 of the Act of 1946. No authority has been cited, and there is none as far as I am aware, which holds that the omission was intended to relax and not to tighten or broaden the protection at home and abroad [1] to be afforded a trade-mark previously owned and unabandoned. On the contrary, as Judge Learned Hand pointed out in Johnson & Son, supra, the Act of 1946 put the federal trade-mark law on a new basis, created a new substantive right in an existing mark, and, as stated in the report of the Senate Committee:

"There can be no doubt under the recent decisions of the Supreme Court of the constitutionality of a national act giving substantive as distinguished from merely procedural rights in trade-marks in commerce * * * and * * * a sound public policy requires that trade-marks should receive nationally the greatest protection that can be given them." U.S.Code Congressional Service, 79th Congress, Second Session, 1946, p. 1277.

In Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972, 973, the court raised the question as to "What harm did it do a chewing gum maker to have an ironmonger use his trade-mark?" In L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272, 273, the same court made the further

1. Bacardi Corp. v. Domenech, 311 U.S. 150, 61 S.Ct. 219, 85 L.Ed. 98.

observation that "It would be hard, for example, for the seller of a steam shovel to find ground for complaint in the use of his trade-mark on a lipstick." Such logic disposes of the need for the term "goods of the same descriptive properties." Such goods are so foreign in their competitive use that no confusion under a similar mark would be likely to arise. However, the same court also held that there would be likelihood of confusion if the mark "Yale" were used on flashlights and batteries in view of the previous use of the identical mark by the opposer on locks and keys. See also Greyhound Corp. v. Robinson Houchin Corp., 89 U.S.P.Q. 621.

Undue emphasis has been placed in this proceeding, in my opinion, on the method by which appellee has distributed its goods. As stated in the recent case of In re Fleet-Wing Corp., 188 F.2d 476, 478, 38 C.C.P.A., Patents, 1039:

> "The emphasis placed * * * on the environment of sales is not appropriate because the application for registration does not limit sales in any particular manner or to any particular stores or stations and it is well established that sales methods are subject to change at any time."

For the reasons stated, the decision of the Acting Commissioner of Patents should be reversed.