
THIS OPINION IS CITABLE
AS PRECEDENT OF
THE T.T.A.B.

Paper No. 28
HANAK/md

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

Fossil, Inc.

v.

The Fossil Group

———

Opposition No. 98,191
to application Serial No. 74/533,481
filed on June 6, 1994

———

Molly Buck Richard of Strasburger and Price for Fossil, Inc.

The Fossil Group, pro se.

———

Before Seeherman, Hanak and Quinn, Administrative Trademark Judges.

Opinion by Hanak, Administrative Trademark Judge:


   The Fossil Group (applicant) seeks to register

FOSSILSCAPES THE FOSSIL GROUP STONESCAPES and design in the

form shown below (hereinafter "applicant's mark") for

"fossil backed clocks" (Class 14); "ornamental fossils"

(Class 19); and "marble table tops" (Class 20).  The

application was filed on June 6, 1994 with a claimed first use date of June 4, 1993 for all goods.



On July 27, 1995 Fossil, Inc. (opposer) filed a notice of opposition alleging that long prior to June 4, 1993, opposer both registered and "used the mark FOSSIL on or in connection with a variety of items among which are included: clothing, namely T-shirts and men's, women's and children's shirts, pants, skirts, jackets and coats; watches; belts; key fobs; handbags; coin purses; tote bags; purses; billfolds; wallets; calendars; datebooks; notepads; posters; diaries; paper gift bags; three ring binders; stationery; envelopes; and pens."  (Notice of opposition paragraph 2). Throughout the notice of opposition, opposer made reference to only one mark, namely, "the mark FOSSIL" or "the FOSSIL mark."  (Notice of opposition paragraphs 2, 3, 5 and 6). Not once in the notice of opposition did opposer allege that it possessed rights in FOSSIL marks in the plural form.

Concluding, opposer alleged that "if the applicant is permitted to use and register its mark for the goods specified in the application opposed herein, confusion in the trade resulting in damage and injury to the opposer could be caused and would result by reason of the similarity between the applicant's mark and the opposer's mark." (Notice of opposition paragraph 8, emphasis added). Moreover, opposer attached to its notice of opposition photocopies of six registrations owned by opposer. In each of the six registrations, the mark depicted is simply the word FOSSIL in typed drawing form. In the notice of opposition, opposer never claimed that it had any rights in any mark besides the word mark FOSSIL. More specifically, opposer never claimed that it had any rights in any mark consisting of the word FOSSIL combined with any design and/or any other wording.

Applicant filed an answer which denied the pertinent allegations of the notice of opposition.

Both parties filed briefs. Neither party requested a hearing. The record in this case includes the testimony depositions with exhibits of Susan S. Mann (vice president and general counsel of opposer) and Saul H. Haskell (general manager of applicant). In addition, the record also includes certified status and title copies of the aforementioned six registrations of opposer's mark FOSSIL

3

depicted in typed drawing form. Finally, the record also includes opposer's responses to certain of applicant's interrogatories and requests for admission, and applicant's responses to certain of opposer's interrogatories and requests for admission.

Before turning to the merits of this matter, two important preliminary issues must be resolved. First, as previously noted, in its notice of opposition opposer claimed rights simply in "the mark FOSSIL" or "the FOSSIL mark." (emphasis added). However, in its brief, opposer now claims that it "is the owner of multiple FOSSIL marks including … both in block letters and in design forms." (Opposer's brief page 3). In particular, at the top of page 17 of its brief opposer reproduces next to applicant's mark one of opposer's purported "multiple FOSSIL marks," namely AUTHENTIC FOSSIL GENUINE and design mark. These two marks are reproduced below just as they appear at the top of page 17 of opposer's brief.




Ms. Mann testified that the mark shown above at the left is opposer's "standard logo," and that opposer has utilized this standard logo on all of its products "at least since 1991." (Mann deposition page 34). According to Ms. Mann, applicant's mark (above right) is "frighteningly similar" to opposer's standard logo (above left). (Mann deposition page 61). It is opposer's position that "the mere appearance of these two marks [shown above] is sufficient to demonstrate confusing similarity between the marks." (Opposer's brief page 17). Almost as an afterthought, opposer states that "furthermore, it should be noted that [opposer] has several block letter registrations for the word FOSSIL" and that "these versions of [opposer's] marks are likewise subject to consumer confusion as a result of applicant's prominent use of FOSSIL in its design mark." (Opposer's brief page 17).

At page 5 of its brief, applicant notes that it "has been surprised and misled by opposer's repeatedly shifting and expanding focus of opposition to registration in this case." In this regard, it should be noted that the testimony deposition of Ms. Mann was taken on the morning of October 9, 1996 and that the testimony deposition of Mr. Haskell (applicant's general manager) was taken on that

5

afternoon.[1] Mr. Haskell stated that he had never seen opposer's purported AUTHENTIC FOSSIL GENUINE and design mark until the morning of October 9, 1996. (Haskell deposition pages 13-14).

In response, opposer states that "applicant fails to realize that [opposer's] block letter registrations extend protection for [opposer's] use of the FOSSIL mark in a variety of fonts, styles, and designs." (Opposer's reply brief page 3). Continuing, opposer also states that it is entitled to rely not only on the mark as it appears in its registrations, "but also upon any other uses, even unregistered, which it can demonstrate," citing Burger Chef Systems, Inc. v. Burger Man, Inc., 492 F.2d 1398, 1399, 181 USPQ 168, 169 (CCPA 1974). (Opposer's reply brief page 4).

At this point, two matters deserve clarification. First, because opposer's registrations of FOSSIL are in typed drawing form, this means that opposer's rights in the word mark FOSSIL are "not limited to the mark depicted in any special form." Phillips Petroleum v. C.J. Webb, 442 F.2d 1376, 170 USPQ 35, 36 (CCPA 1971). Accordingly, in any likelihood of confusion analysis, we "must consider all reasonable manners in which [the word FOSSIL] could be depicted." INB National Bank v. Metrohost, 22 USPQ2d 1585,

---

[1] The parties stipulated in writing that the testimony deposition of Mr. Haskell could be taken prior to applicant's testimony period set by the Board in order to permit his

1588 (TTAB 1992). Thus, opposer's typed drawing registrations of FOSSIL afford opposer a scope of protection which encompasses all reasonable manners in which the word FOSSIL could be depicted including, simply by way of example, all lower case block letters, all upper case block letters, a mixture of lower case and upper case block letters and various script forms. However, opposer's registrations of the word FOSSIL in typed drawing form do not afford opposer rights in the word FOSSIL combined with other wording or with designs. Hence, opposer's registrations of FOSSIL per se in typed drawing form do not encompass opposer's alleged mark AUTHENTIC FOSSIL GENUINE and oval design.

Second, it is quite true that an opposer is not limited in an opposition to relying solely on those marks for which it has registrations. An opposer can rely upon other forms of its marks or indeed other marks for which it lacks registrations, provided opposer is the prior user. However, these other marks must be pled or tried by the consent of the parties. In this regard, we note that the Court in Burger Chef, in stating that opposer could "rely on its uses as well as its registrations," was careful to note that "these uses … were not contested by [applicant]." Burger Chef, 181 USPQ at 169. In contrast, applicant here has

---

deposition and Ms. Mann's to be "taken on the same day" thereby achieving "efficiencies in time and cost."

7

clearly objected to opposer's reliance upon marks other than the word mark FOSSIL.

Indeed, opposer's actions during the discovery phase of this proceeding would lead any reasonable person to believe that the only mark which opposer was asserting rights in was the word mark FOSSIL per se, the only mark which was pled in the notice of opposition. For example, in response to applicant's interrogatory no. 6, opposer stated, in part, as follows: "Opposer objects to this interrogatory on the grounds that the phrase 'Opposer's Mark' is undefined. To the extent such term is intended to include marks other than the mark FOSSIL, opposer objects to this interrogatory on the grounds that it seeks information that is irrelevant to matters at issue in this proceeding, and is not calculated to lead to the discovery of admissible evidence." Opposer gave the exact same answer in response to applicant's interrogatory no. 7. Likewise, in response to applicant's requests for admission nos. 7 and 15, opposer responded, in part, as follows: "Opposer's Mark [singular form] is a word mark having no specific type face, font, design or layout restrictions."

Throughout its responses to applicant's interrogatories and requests for admission, opposer referred to its mark in the singular form and opposer referred to its mark as being "a word mark." Opposer's use of the words "having no

8

specific type face, font, <u>design or layout restrictions</u>" (emphasis added) cannot, in fairness, be read so as to put applicant on notice that opposer was claiming rights in other marks such as AUTHENTIC FOSSIL GENUINE and oval design.

Opposer knew full well its own marks. If opposer wished to rely upon whatever rights it might have in the mark AUTHENTIC FOSSIL GENUINE and oval design, it should have amended its notice of opposition to plead common law rights in said mark. At a minimum, in its interrogatory answers and responses to requests for admission, opposer should have disclosed to applicant all marks (registered and unregistered) upon which opposer intended to rely to prove likelihood of confusion. Not only did opposer fail to do so, but indeed opposer's answers and responses actually reinforced the notion that opposer was relying simply upon the only mark set forth in the notice of opposition, namely, the word mark FOSSIL. Accordingly, in our likelihood of confusion analysis, we will focus solely upon a comparison of applicant's mark with opposer's word mark FOSSIL in all reasonable forms of presentation. Of course, as will be discussed at greater length later, since applicant itself depicts in applicant's mark the word FOSSIL in fairly typical block letters, opposer's registrations of FOSSIL in

typed drawing form clearly encompass this same manner of presentation.

The second important preliminary issue to be resolved is whether opposer can rely upon its purported common law use of its mark FOSSIL on clocks. Clocks are not encompassed by any of opposer's six registrations, nor were they ever mentioned in opposer's notice of opposition. See Pep Boys v. Edwin F. Guth, 197 F.2d 527, 94 USPQ 158, 159 (CCPA 1952) ("However, since the notice of opposition did not allege use of the mark on any product other than storage batteries, no other product can be considered in this proceeding."). Indeed, not only are clocks not covered by opposer's registrations nor mentioned in its notice of opposition, but in addition, during discovery opposer explicitly objected to applicant's interrogatory nos. 6 and 7 "on the grounds that [they request] information regarding use of FOSSIL by opposer in connection with clocks. Such information is irrelevant to matters at issue in this proceeding, and is not calculated to lead to the discovery of admissible evidence." Moreover, in response to applicant's interrogatory no. 5, opposer objected by stating "that information regarding the sale of clocks by opposer is irrelevant to matters at issue in this proceeding, and is not calculated to lead to the discovery of admissible

10

evidence." Hence, opposer may not rely upon its purported common law rights in its mark FOSSIL for clocks.

In summary, our likelihood of confusion analysis will be limited to a consideration of applicant's mark and opposer's word mark FOSSIL in all normal manners of presentation. However, this proceeding will not compare applicant's mark with any other mark of opposer even if said mark includes the word FOSSIL. Thus, as previously noted, our likelihood of confusion analysis will not take into consideration opposer's purported mark AUTHENTIC FOSSIL GENUINE and oval design reproduced previously. Also, our likelihood of confusion analysis will be limited to a consideration of applicant's three types of goods compared to the goods set forth in opposer's six registrations, which correspond to the goods set forth in paragraph 2 of the notice of opposition. We will give no consideration to those goods which opposer did not list in its notice of opposition, including specifically clocks.

Before turning to the likelihood of confusion analysis, one obvious point should be made, namely, that priority is not an issue in this proceeding. Not only has opposer properly made of record its six registrations depicting FOSSIL in typed drawing form, but in addition, the record reveals that opposer first used its mark FOSSIL on watches

11

in 1985, approximately eight years prior to applicant's first use of its mark in June 1993.

At the outset, it should be noted that for the purposes of our likelihood of confusion analysis, applicant's three class application is treated as three separate applications. 2 J. McCarthy, McCarthy on Trademarks and Unfair Competition Section 19:56 at page 19-96 (4th ed. 1998). That is to say, this Board makes separate determinations as to likelihood of confusion between opposer's mark FOSSIL for the goods set forth in opposer's notice of opposition and six registrations vis-à-vis applicant's mark for (1) fossil backed clocks; (2) ornamental fossils; and (3) marble table tops.

Considering first applicant's mark as used in connection with fossil backed clocks, it is quite obvious that of all the goods for which opposer has established prior rights in its mark FOSSIL, opposer's FOSSIL watches are closest to clocks. Both perform the same function. They tell time. Both operate with battery power or mechanical power (i.e. springs which are wound up). Moreover, opposer's Registration No. 1,467,255 for FOSSIL lists simply "watches." The term "watches" is broad enough to encompass, obviously, pocket watches. Some pocket watches may be as large as small clocks. In this regard, we note that while applicant's application restricts its clocks

12

to those which are "fossil backed," it does not restrict the word "clocks" in terms of size. Thus, not only do watches and clocks tell time, but in addition, some watches (notably pocket watches) can be quite similar to small clocks in terms of size and appearance. Accordingly, while clocks and watches are not identical goods, they are very closely related goods.

Turning to a consideration of applicant's mark and opposer's FOSSIL mark, we note at the outset that as the degree of similarity of the goods of the parties increases, "the degree of similarity [of the marks] necessary to support a conclusion of likely confusion declines." Century 21 Real Estate Corp. v. Century Life of America, 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992). Although one could argue that there are only limited similarities between opposer's one word mark FOSSIL and applicant's five word and design mark, namely, FOSSILSCAPES THE FOSSIL GROUP STONESCAPES and design, the foregoing approach ignores the fact that the most prominent wording of applicant's mark is THE FOSSIL GROUP. Not only is the lettering of the foregoing three words larger than the lettering for FOSSILSCAPES and STONESCAPES, but of equal importance, the words THE FOSSIL GROUP stand out in the center of applicant's mark and are quite easy to read because they are perfectly horizontal. The other two words in applicant's

13

mark (FOSSILSCAPES and STONESCAPES) are depicted in arc form and are incorporated into the design feature of applicant's overall mark.

Of course, it need hardly be said that in comparing the marks of the parties, the marks must be compared in their entireties. Nevertheless, it is not improper in making this comparison to give more weight to one feature of a mark if such feature is more prominent than the other features. For the reasons just articulated, we find that the most prominent feature of applicant's mark is the phrase THE FOSSIL GROUP. Moreover, the word THE has little source identifying significance, and the word GROUP has somewhat limited source identifying significance.

Accordingly, we find that applicant's mark and opposer's mark FOSSIL are similar enough such that their use on closely related goods (clocks and watches) is likely to result in confusion. Moreover, to the extent that there may be doubts on the issue of likelihood of confusion, such doubts must be resolved in favor of opposer as the registrant and long prior user. Century 21 Real Estate, 23 USPQ2d at 1701.

Turning now to consideration of whether the use of applicant's mark on "ornamental fossils" (class 19) and on "marble table tops" (class 20) is likely to cause confusion with opposer's FOSSIL mark for the various goods listed in

14

opposer's six registrations, we find that there is no likelihood of confusion. Put quite simply, the burden of proving likelihood of confusion rests with opposer. Opposer has simply failed to prove any relationship between, on the one hand, ornamental fossils and marble table tops and, on the other hand, any of opposer's pled goods (watches, various items of apparel, purses, billfolds, wallets, calendars, date books, stationery articles, pens etc. but not clocks) such that the use of applicant's mark on the former goods and the use of opposer's mark FOSSIL on the latter goods is likely to result in confusion. Moreover, it should be noted that when applicant's mark is used on ornamental fossils and marble table tops, the words FOSSIL and FOSSILSCAPES (along with the design of fossils) would cause consumers to focus on the ordinary meaning of the word "fossil" as it appears in applicant's mark, namely, "any hardened remains or traces of plant or animal life preserved in rock formations." Webster's New World Dictionary (2d ed. 1970). See also Mann deposition page 71. In contrast, the use of the mark FOSSIL in connection with opposer's various goods would not bring to mind the ordinary dictionary meaning of the word "fossil." As opposer itself has repeatedly emphasized, as applied to opposer's goods, the mark FOSSIL is an arbitrary term. (Mann deposition page 9).

15

Ms. Mann acknowledged that none of opposer's products "are made [of] or include fossils." (Mann deposition page 74).

Moreover, it appears that even opposer is not extremely concerned with applicant's use of its mark on "ornamental fossils" and "marble table tops." In this regard, we note that Ms. Mann, opposer's vice president and general counsel, stated that "we [opposer] oppose them [applicant] especially with regard to the clock issue because we produce horological instruments including clocks. That's our stock in trade. It's a logical conclusion for a consumer to think that we're now making and producing clocks. And if they [applicant's clocks] prove to be inferior, it could really impact our [opposer's] brand." (Mann deposition page 59). Indeed, later in her deposition Ms. Mann was even more precise in stating "that the conflict arises out of the fact that their [applicant's] main product here is a clock." (Mann deposition page 62, emphasis added). Moreover, Ms. Mann acknowledged that despite opposer's significant sales of its FOSSIL brand products, she, as general counsel of opposer, was unaware of any instance of confusion involving opposer's FOSSIL brand products (which do not include any actual fossils or parts of fossils) and "any products comprised partially or wholly of fossils," including, but not limited to, applicant's actual fossil products. (Mann deposition page 86, emphasis added).

16

In addition, as further evidence that opposer appears of the view that the use of applicant's mark on "ornamental fossils" and "marble table tops" is not likely to cause confusion, we note that opposer defended its objections to applicant's interrogatories 1 and 2 by stating, in part, that "this proceeding involves the use of the term FOSSIL for horological instruments." (Opposer's Response to Applicant's Motion to Compel pages 3-4). Moreover, in response to request for admission no. 8, opposer stated as follows: "Opposer objects to this request to the extent that it requests information regarding use of the term 'fossil' on goods unrelated to watches."

In finding that there exists no likelihood of confusion between opposer's mark FOSSIL for the goods set forth in opposer's six registrations and notice of opposition and applicant's mark for ornamental fossils and marble table tops, we have taken into account opposer's claim that its FOSSIL mark is famous. In this regard, opposer has put in evidence showing that its annual sales of all its FOSSIL products are approximately $200 million, and that its total annual advertising expenditures are approximately $12 million. (Mann deposition pages 41 and 47).

However, simply standing alone, opposer's sales and advertising figures for its FOSSIL products are not so great so as to cause this Board to find that FOSSIL is a famous

17

mark. We note that opposer has totally failed to put its sales and advertising figures for its FOSSIL products in perspective by comparing them to the sales and advertising figures for similar products. Indeed, opposer did not even break down its sales and advertising figures for opposer's own various types of FOSSIL products. If a party plaintiff in a Board proceeding is to rely simply on sales and advertising figures in an effort to establish that its mark is famous, then it is incumbent upon that party plaintiff to place the sales and advertising figures in context, for example, by showing that the product is the leading product in its category, the second leading product in its category etc. Raw sales and advertising figures -- unless they are extraordinarily large, which is not the case with opposer's FOSSIL products -- are simply not sufficient by themselves to establish that the mark is famous. See General Mills Inc. v. Health Valley Foods, 24 USPQ2d 1270, 1277 (TTAB 1992).

Of course, the better practice is not to rely merely upon sales and advertising figures, but also to submit, for example, consumer and trade testimony as well as newspaper and magazine articles discussing opposer's FOSSIL products. In this case, opposer has done none of the foregoing. Besides the raw sales and advertising figures previously

discussed, opposer has merely submitted copies of its own sales literature for its various FOSSIL products.

Hence, in finding that there exists no likelihood of confusion vis-à-vis opposer's FOSSIL mark for opposer's products and applicant's mark for ornamental fossils and marble table tops, we have done so on the basis that opposer has failed to prove that its mark FOSSIL is famous. We will not speculate whether our decision would have been different had opposer established that its FOSSIL mark was famous.

Decision: The opposition is sustained as to applicant's class 14 goods (fossil back clocks). The opposition is dismissed as to applicant's class 19 (ornamental fossils) and class 20 (marble table tops) goods.

E. J. Seeherman

E. W. Hanak

T. J. Quinn
Administrative
Trademark Judges,
Trademark Trial and
Appeal Board

30 OCT 1998

19