27 C.C.P.A. (Patents)

## AUBURN RUBBER CORPORATION v. HANOVER RUBBER CO.
### Patent Appeal No. 4200.

Court of Customs and Patent Appeals.
Dec. 4, 1939.

Edgar J. Clarkson, of Washington, D. C. (Charles R. Allen, of Washington, D. C., of counsel), for appellant.

No appearance for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is a trade-mark cancellation proceeding. On May 28, 1935 the United

States Patent Office issued to appellant trade-mark registration No. 324,692 for the mark $\frac{2}{\text{"Life"}}$ applied to rubber heels. The statement in the registration issued contains the recital that "The trade-mark has been continuously used and applied to said goods in applicant's business since August 12, 1924."

On August 19, 1936 appellee filed a petition for the cancellation of said mark and alleged that it had adopted and had used since on or about January, 1922, the mark "Nu-Life" for rubber heels, soles and half soles; that said mark was registered in the United States Patent Office on February 6, 1923, registration No. 164,029; that petitioner is the owner of said registration and of all rights to the same; that petitioner's "Nu-Life" rubber heels have been extensively sold and advertised, and that the marks of the parties are confusingly similar. The petition contained the usual allegation of injury to appellee by reason of appellant's registration.

Appellant's answer denied all the material parts of the petition except that it was admitted that the goods to which the respective marks are applied are of the same descriptive properties.

The evidence in the case consists of stipulated testimony. The stipulated testimony in behalf of appellee recites that appellee's place of business is at West Hanover, Massachusetts, and that it is engaged in the business of selling rubber products, including rubber heels and soles; that on or about January 3, 1922, it adopted and first used the trade-mark "Nu-Life" and that since said date it has continuously used said mark upon rubber heels manufactured and sold by it; that it has sold over 13,-000,000 pairs of heels bearing said mark; that said heels have been sold within the New England States and the State of New York; that appellee first heard of the "2-Life" trade-mark registration by appellant shortly prior to November 20, 1934, and that on said date the treasurer of appellee wrote a letter to appellant charging infringement of appellee's mark; and that appellant answered said letter denying that any infringement existed.

The stipulated testimony on behalf of appellant recites that it is located and doing business at Auburn, Indiana, and is successor to the business of Auburn Rubber Company by change of name; that on or about August 12, 1924 appellant, through its predecessor, first adopted and used the mark "2-Life" for rubber heels, and that it has continuously used said mark since said date in interstate commerce; that said mark was originated by the president of appellant, and that at the time of its adoption he had no knowledge of appellee's mark "Nu-Life" used on rubber heels; that since its adoption and use of the mark "2-Life" appellant has expended large sums of money in advertising said mark and has employed a number of salesmen to exploit the trade-mark "2-Life" and solicit the sale of goods thereunder.

Said stipulated testimony further recites: "Respondent's heels bearing the trade mark '2-Life' have been sold throughout the United States and in some foreign countries consistently since 1924, consistently including the continuous offering and selling of '2-Life' heels in the Central and New England states, the sales outlets including both the shoe factory and jobbing trade; that in more recent years the sale of this product has extended to chain stores and hardware jobbers; that the business of said respondent in the sale of '2-Life' heels, especially in the New England States and in the State of New York, has constantly increased with no known conflict with the sale of the 'Nu-Life' heel of the petitioner, the Hanover Rubber Company; * * *."

The Examiner of Interferences sustained the petition for cancellation upon the ground that the marks of the parties were confusingly similar. Upon appeal, the commissioner affirmed the decision of the Examiner of Interferences, holding, as did said examiner, that the marks were confusingly similar. From such decision this appeal was taken. Appellee has made no appearance in this court.

Appellant contends that the record establishes that, although the goods of the parties competed in the same market, no confusion or mistake between the marks has occurred in the mind of the public, and that the marks so differ in appearance, sound, and significance that the commissioner erred in holding that they are confusingly similar.

It is true that there is some difference in the significance of the two marks, but both suggest the life of the heels to which the marks are applied. "2-Life" suggests longer than ordinary life of the heels, while "Nu-Life" suggests a life of the heels that is new. Broadly, however, the significance

590

of the two marks to the ordinary purchaser is the same.

Appellant would attach very little weight to the "Life" portion of each mark. However we think this common portion of the two marks is important to the purchaser; and, regarding the marks as a whole, without dissecting them, we must give considerable weight to the common portions thereof in determining whether the marks are confusingly similar.

We have no doubt that in sound the two marks should be held to be confusingly similar, unless we agree with appellant's contention that the record establishes that in twelve years' competitive use in the same territory no confusion has occurred, and that such fact establishes that the marks are not confusingly similar.

We would first observe that we cannot agree with appellant's counsel that the record establishes that no confusion has ever occurred in the use of the two marks. The evidence relied upon to establish this contention consists of the stipulated testimony of three witnesses, all of whom were located and residing at Auburn, Indiana, far from the field in which the products to which the respective marks were applied were in competition, and we think the fair construction of their testimony is that no confusion was known to them, and such testimony cannot be regarded as establishing that there had been no actual confusion in the minds of purchasers by reason of the similarity of the marks.

In any event, proof tending to show lack of confusion in the use of trademarks is not controlling. The question in cases like the one before us is whether the use of the marks involved would be likely to cause confusion or mistake in the mind of the public or to deceive purchasers. The answer to this question is largely a matter of opinion after considering the marks and the goods to which they are applied. Procter & Gamble Co. v. J. L. Prescott Co., 49 F.2d 959, 18 C.C.P.A., Patents, 1433; see also Pepsodent Co. v. Comfort Manufacturing Co., 83 F.2d 906, 23 C.C.P. A., Patents, 1224.

The articles to which the respective marks are applied are inexpensive, and it is clear that no great care in purchasing would be observed; we think that in the sound of the marks, when spoken, purchasers would very likely fail to distinguish between "2-Life" and "Nu-Life" and would be confused by their similarity.

We think it proper to observe that so far as appears from the record before us appellant adopted in good faith its mark "2-Life", without any previous knowledge of appellee's mark.

We are of the opinion that the Patent Office tribunals did not err in sustaining appellee's petition for cancellation and the decision of the commissioner is affirmed.

Affirmed.